In the United States District Court
for the Northern District of Indiana

| | |
|---|---|
| Denim Zachary and Michelle Coffin, | |
| *On behalf of themselves and those similarly situated*, | Case No. |
| Plaintiffs, | Judge |
| v. | |
| Freeland Enterprises, Inc., RFJ Trust I, Freeland Group Restaurants, Hut Diggity, Deanna Freeland, Todd Hollman, Tyler Freeland, John Doe Corporation 1-10, John Doe 1-10; | Jury Demand Endorsed Hereon |
| Defendants. | |

Class and Collective Action Complaint

1.      Plaintiffs Denim Zachary and Michelle Coffin ["Plaintiffs" collectively], on behalf of themselves and all similarly-situated individuals, bring this action against Defendants Freeland Enterprises, Inc., RFJ Trust I, Freeland Group Restaurants, Hut Diggity, Deanna Freeland, Todd Hollman, Tyler Freeland, John Doe Corporation 1-10, and John Doe 1-10 (collectively "Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and Indiana law.

2.      Defendants operate or have operated a least 40 Pizza Hut Pizza franchises (the "Freeland Enterprises" stores or restaurants) since on or about 1977.

3.     Defendants have repeatedly and willfully violated the Fair Labor Standards Act and Indiana law by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked and minimum overtime rate for hours worked in excess of 40 per workweek.

4.     All delivery drivers at the Freeland Enterprises' stores, including Plaintiffs, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for delivery-related expenses.

5.     Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.     Plaintiffs also bring this action on behalf of themselves and similarly situated current and former delivery drivers in Indiana, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Indiana law.

**I.   Jurisdiction and Venue**

7.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

8.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' Indiana law claims.

9.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiffs reside in Indiana and Defendants own and operate the subject stores in this district.

**II.  Parties**

**Plaintiff**

**Denim Zachary**

10.    Mr. Zachary resides in the state of Indiana at all times relevant. Mr. Zachary worked for Defendants in Indiana at a store in Crawfordsville.

11.    At all times relevant, Mr. Zachary was an "employee" of Defendants as defined in the FLSA and Indiana wage law.

12.    Mr. Zachary has given written consent to join this action.

**Michelle Coffin**

13.    Ms. Coffin resides in the state of Indiana at all times relevant. Ms. Coffin worked for Defendants in Indiana at a store in Crawfordsville.

14.    At all times relevant, Ms. Coffin was an "employee" of Defendants as defined in the FLSA and Indiana wage law.

15.    Ms. Coffin has given written consent to join this action.

**Defendants**

**Freeland Enterprises, Inc.**

16.    Defendant Freeland Enterprises is an Indiana corporation headquartered at 202 West Berry Street, Suite 400, Fort Wayne, Indiana.

17.    Upon information and belief, Deanna Freeland is or was a shareholder and/or officer of Freeland Enterprises.

18.    Upon information and belief, Todd Hollman is or was a shareholder and/or officer of Freeland Enterprises.

19.    Upon information and belief, Tyler Freeland is or was a shareholder and/or officer of Freeland Enterprises.

20.    Freeland Enterprises operates or has operated during the relevant time period at least 40 Pizza Hut stores.

21.    Freeland Enterprises has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

22.    Freeland Enterprises has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

23.    At all relevant times, Freeland Enterprises maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, overtime wages, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

24.    Freeland Enterprises is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA and Indiana law.

25.    At all relevant times, Freeland Enterprises has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

26.    Upon information and belief, Freeland Enterprises's gross revenue exceeds $500,000 per year.

**RFJ Trust I**

27.    Defendant RFJ Trust I is an Indiana trust domiciled at 202 West Berry Street, Suite 400, Fort Wayne, Indiana.

28.     Upon information and belief, Deanna Freeland is or was a trustee and/or beneficiary of RFJ Trust I.

29.     Upon information and belief, Todd Hollman is or was a trustee and/or beneficiary of RFJ Trust I.

30.     Upon information and belief, Tyler Freeland is or was a trustee and/or beneficiary of RFJ Trust I.

31.     RFJ Trust I operates or has operated during the relevant time period at least 40 Pizza Hut stores.

32.     RFJ Trust I has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

33.     RFJ Trust I has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

34.     At all relevant times, RFJ Trust I maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, overtime wages, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

35.     RFJ Trust I is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA and Indiana law.

36.     At all relevant times, RFJ Trust I has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

37.    Upon information and belief, RFJ Trust I's gross revenue exceeds $500,000 per year.

**Freeland Group Restaurants**

38.    Defendant Freeland Group Restaurants is an Indiana corporation headquartered at 202 West Berry Street, Suite 400, Fort Wayne, Indiana.

39.    Upon information and belief, Deanna Freeland is or was a shareholder and/or officer Freeland Group Restaurants.

40.    Upon information and belief, Todd Hollman is or was a shareholder and/or officer of Freeland Group Restaurants.

41.    Upon information and belief, Tyler Freeland is or was a shareholder and/or officer of Freeland Group Restaurants.

42.    Freeland Group Restaurants operates or has operated during the relevant time period at least 40 Pizza Hut stores.

43.    Freeland Group Restaurants has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

44.    Freeland Group Restaurants has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

45.    At all relevant times, Freeland Group Restaurants maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, overtime wages, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

46.     Freeland Group Restaurants is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA and Indiana law.

47.     At all relevant times, Freeland Group Restaurants has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

48.     Upon information and belief, Freeland Group Restaurant's gross revenue exceeds $500,000 per year.

**Hutt Diggity**

49.     Defendant Hutt Diggity is an Indiana corporation headquartered at 202 West Berry Street, Suite 400, Fort Wayne, Indiana.

50.     Upon information and belief, Deanna Freeland is or was a shareholder and/or officer of Hutt Diggity.

51.     Upon information and belief, Todd Hollman is or was a shareholder and/or officer of Hutt Diggity.

52.     Upon information and belief, Tyler Freeland is or was a shareholder and/or officer of Hutt Diggity.

53.     Hutt Diggity operates or has operated during the relevant time period at least 40 Pizza Hut stores.

54.     Hutt Diggity has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

55.     Hutt Diggity has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

7

56.    At all relevant times, Hutt Diggity maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, overtime wages, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

57.    Hutt Diggity is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA and Indiana law.

58.    At all relevant times, Hutt Diggity has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

59.    Upon information and belief, Hutt Diggity's gross revenue exceeds $500,000 per year.

**Deanna Freeland**

60.    Defendant Deanna Freeland is the owner and CEO of the Freeland Enterprises stores.

61.    Defendant Deanna Freeland is or was the owner and CEO of other legal entities that operate the Freeland Enterprises stores.

62.    Defendant Deanna Freeland is the manager of other legal entities that operate the Freeland Enterprises stores.

63.    Deanna Freeland is individually liable to Freeland Enterprises delivery drivers under the definitions of "employer" set forth in the FLSA and Indiana law because she owns and operates the Freeland Enterprises stores, serves as a manager and/or member of Freeland

Enterprises, ultimately controls significant aspects of Freeland Enterprises day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

64.     At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland has had financial control over the operations at each of the Freeland Enterprises stores.

65.     At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland has a role in significant aspects of the Freeland Enterprises day to day operations.

66.     At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland has had control over the Freeland Enterprises stores' pay policies.

67.     At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland has had power over personnel and payroll decisions at the Freeland Enterprises stores, including but not limited to influence over delivery driver pay.

68.     At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland has had the power to hire, fire, and discipline employees, including delivery drivers at the Freeland Enterprises stores.

69.     At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland has had the power to stop any illegal pay practices that harmed delivery drivers at the Freeland Enterprises stores.

70.    At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland has had the power to transfer the assets and liabilities of Freeland Enterprises.

71.    At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland has had the power to declare bankruptcy on behalf of Freeland Enterprises.

72.    At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland has had the power to enter into contracts on behalf of each of the Freeland Enterprises stores.

73.    At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland has had the power to close, shut down, and/or sell each of the Freeland Enterprises stores.

74.    At all relevant times, by virtue of her role as owner, CEO, and/or manager of Freeland Enterprises, Deanna Freeland had authority over the overall direction of each of Freeland Enterprises stores and was ultimately responsible for their operations.

75.    The Freeland Enterprises stores function for Deanna Freeland's profit.

76.    Deanna Freeland has influence over how the Freeland Enterprises stores can run more profitably and efficiently.

**Todd Hollman**

77.    Defendant Todd Hollman is the owner and CEO of the Freeland Enterprises stores.

78.    Defendant Todd Hollman is or was the owner and CEO of other legal entities that operate the Freeland Enterprises stores.

79.    Defendant Todd Hollman is the manager of other legal entities that operate the Freeland Enterprises stores.

80.    Todd Hollman is individually liable to Freeland Enterprises delivery drivers under the definitions of "employer" set forth in the FLSA and Indiana law because she owns and operates the Freeland Enterprises stores, serves as a manager and/or member of Freeland Enterprises, ultimately controls significant aspects of Freeland Enterprises day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

81.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Todd Hollman has had financial control over the operations at each of the Freeland Enterprises stores.

82.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Todd Hollman has a role in significant aspects of the Freeland Enterprises day to day operations.

83.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Todd Hollman has had power over personnel and payroll decisions at the Freeland Enterprises stores, including but not limited to influence over delivery driver pay.

84.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Todd Hollman has had the power to hire, fire, and discipline employees, including delivery drivers at the Freeland Enterprises stores.

85.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Todd Hollman has had the power to stop any illegal pay practices that harmed delivery drivers at the Freeland Enterprises stores.

11

86.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Todd Hollman has had the power to transfer the assets and liabilities of Freeland Enterprises.

87.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Todd Hollman has had the power to declare bankruptcy on behalf of Freeland Enterprises.

88.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Todd Hollman has had the power to enter into contracts on behalf of each of the Freeland Enterprises stores.

89.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Todd Hollman has had the power to close, shut down, and/or sell each of the Freeland Enterprises stores.

90.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Todd Hollman had authority over the overall direction of each of Freeland Enterprises stores and was ultimately responsible for their operations.

91.    The Freeland Enterprises stores function for Todd Hollman's profit.

92.    Todd Hollman has influence over how the Freeland Enterprises stores can run more profitably and efficiently.

**Tyler Freeland**

93.    Defendant Tyler Freeland is the owner and CEO of the Freeland Enterprises stores.

94.    Defendant Tyler Freeland is or was the owner and CEO of other legal entities that operate the Freeland Enterprises stores.

95.     Defendant Tyler Freeland is the manager of other legal entities that operate the Freeland Enterprises stores.

96.     Tyler Freeland is individually liable to Freeland Enterprises delivery drivers under the definitions of "employer" set forth in the FLSA and Indiana law because she owns and operates the Freeland Enterprises stores, serves as a manager and/or member of Freeland Enterprises, ultimately controls significant aspects of Freeland Enterprises day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

97.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Tyler Freeland has had financial control over the operations at each of the Freeland Enterprises stores.

98.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Tyler Freeland has a role in significant aspects of the Freeland Enterprises day to day operations.

99.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Tyler Freeland has had power over personnel and payroll decisions at the Freeland Enterprises stores, including but not limited to influence over delivery driver pay.

100.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Tyler Freeland has had the power to hire, fire, and discipline employees, including delivery drivers at the Freeland Enterprises stores.

101.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Tyler Freeland has had the power to stop any illegal pay practices that harmed delivery drivers at the Freeland Enterprises stores.

102.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Tyler Freeland has had the power to transfer the assets and liabilities of Freeland Enterprises.

103.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Tyler Freeland has had the power to declare bankruptcy on behalf of Freeland Enterprises.

104.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Tyler Freeland has had the power to enter into contracts on behalf of each of the Freeland Enterprises stores.

105.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Tyler Freeland has had the power to close, shut down, and/or sell each of the Freeland Enterprises stores.

106.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of Freeland Enterprises, Tyler Freeland had authority over the overall direction of each of Freeland Enterprises stores and was ultimately responsible for their operations.

107.     The Freeland Enterprises stores function for Tyler Freeland's profit.

108.     Tyler Freeland has influence over how the Freeland Enterprises stores can run more profitably and efficiently.

**John Doe Corporations 1-10**

109.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Defendants own and operate other entities and/or

limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and Indiana law.

110.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

111.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, there are other Defendants who own an interest and/or have operational control over the Freeland Enterprises stores that also qualify as Plaintiff's "employer" under the FLSA.

112.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

    III.    **Facts**

**Classwide Factual Allegations**

113.    During all relevant times, Defendants have operated the Freeland Enterprises stores.

114.    All or some of the Freeland Enterprises stores employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

115.    Plaintiffs and the similarly situated persons Plaintiff seek to represent are current and former delivery drivers employed by Defendants at the Freeland Enterprises stores.

116.    All delivery drivers employed at the Freeland Enterprises stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

117.    When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Freeland Enterprises stores building pizza boxes, making pizzas, cleaning, preparing food items, taking orders, and completing other duties inside the restaurant as necessary.

118.    Defendants' delivery drivers are paid minimum wage for work performed in the store.  They also were paid a tipped wage of $4.25 for their out of store delivery work.

119.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

120.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, licensing, registration, and financing costs, and other equipment necessary for delivery drivers to complete their job duties.

121.    Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, paid licensing, registration, and financing costs, and suffered automobile depreciation all for the primary benefit of Defendants.

122.    At all relevant times, Plaintiffs and other similarly situated delivery drivers were reimbursed a per-mile reimbursement rate for each mile they drove that was less than the IRS standard business mileage rate.

123.    Defendants have not maintained records of the actual expenses incurred by their delivery drivers.

124.    Defendants have not collected records of receipts for gasoline purchases made by delivery drivers.

125.    Defendants have not collected records relating to repairs completed on the delivery drivers' vehicles.

126.    Defendants have not collected records relating to maintenance completed on the delivery drivers' vehicles.

127.    Defendants have not collected records of the delivery drivers' vehicle insurance costs.

128.    Defendants have not collected records relating to the depreciation of delivery drivers' vehicles.

129.    Defendants have not collected records of the purchase price and/or financing of the delivery drivers' vehicles.

130.    Defendants have not collected records relating to the cost of storing the delivery drivers' vehicles.

131.    Defendants have not reimbursed delivery drivers based on their actual expenses.

132.    Defendants have not reimbursed delivery drivers at the IRS standard business mileage rate.

133.    Defendants have not reimbursed delivery drivers based on a reasonable approximation of the expenses they incurred.

134.    At all relevant times, Defendants have failed to pay Plaintiffs and similarly situated delivery drivers the legally required minimum wage and overtime wages and failed to adequately reimburse them for their automobile expenses.

135.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.    2020: 57.5 cents/mile
b.    2021: 56 cents/mile
c.    2022: 58.5 cents/mile
d.    2023: 65.5 cents/mile

136.    At all relevant times, Defendants apply the same or similar pay policies, practices, and procedures to all delivery drivers at the Freeland Enterprises stores.

137.    All of Defendants' delivery drivers had similar experiences to those of Plaintiffs. They received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

138.    Because the delivery drivers incurred unreimbursed automobile expenses and had deductions taken from their wages and overtime wages for the benefit of Defendants, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

139.    Defendants have willfully failed to pay federal and state minimum wage and overtime wages Plaintiffs and similarly situated delivery drivers at the Freeland Enterprises stores.

### Plaintiffs' Individual Factual Allegations

140.    Defendants harmed Plaintiffs in a manner consistent with their policies, patterns, and practices as described herein.

**Denim Zachary**

141.    Mr. Zachary worked at Defendants' Pizza Hut store in Crawfordsville, Indiana, from July 2019 to September 2021.

142.    Mr. Zachary was an hourly, non-exempt employee of Defendants.

143.    As a delivery driver, Mr. Zachary delivered pizza and other food items to Defendants' customers' homes and businesses.

144.    When he was not making deliveries, Mr. Zachary worked inside the restaurant, completing tasks such as taking orders, making pizza, building pizza boxes, taking out trash, sweeping up the food line, mopping and sweeping, and completing other general tasks within the store.

145.    Mr. Zachary was paid Indiana minimum wage for the hours he worked for Defendants for work performed inside the stores.  For work performed delivering pizzas, Scott was paid a tipped-wage rate of $4.25 per hour.

146.    Defendants did not record all of Mr. Zachary's expenses he incurred while completing deliveries for them.

147.    Defendants did not reimburse Mr. Zachary at the IRS standard business mileage rate for each mile he drove.

148.    Defendants did not reimburse Mr. Zachary based on a reasonable approximation of his expenses.

149.    Defendants required Mr. Zachary to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, registration, licensing, and financing costs, and other equipment necessary for delivery drivers to complete their job duties.

150.    Pursuant to such requirements, Mr. Zachary purchased gasoline, vehicle parts and fluids, antifreeze, automobile repair and maintenance services, automobile insurance, registration, licensing, and financing costs, and suffered automobile depreciation all for the primary benefit of Defendants.

151.    Mr. Zachary was reimbursed between twenty-eight and thirty-two cents ($0.28 - .32) per mile he drove while completing deliveries for Defendants.  Further, the system that Defendants' use to track these miles routinely undercounts his actual miles driven.

152.    Mr. Zachary regularly drove approximately ten (10) miles round trip per delivery.

153.    During 2021, for example, the IRS business mileage reimbursement was $0.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates.

154.    Using that IRS rate as a reasonable approximation of Mr. Zachary's automobile expenses, every mile driven on the job decreased his net wages by approximately $0.24 ($0.56 - $0.32) per mile. Considering Mr. Zachary's estimate of about ten average miles per delivery, Defendants under-reimbursed him about $2.40 per delivery ($0.24 x 10 average miles).

155.    Mr. Zachary made an average of 12 deliveries per day.

156.    Thus, Mr. Zachary consistently "kicked back" to Defendants approximately $28.80 per day ($2.40 per delivery x 12 deliveries).  Plaintiff's typical shift lasted 8 hours, and thus he kicked back $3.60 per hour, meaning he was paid $3.65 per hour.

157.    Because Mr. Zachary was paid a tipped-wage rate of $4.25 per hour while delivering pizza, the degree of his damages is even more substantial at these times, meaning that his compensation for his work while delivering pizzas was only $0.65 per hour.

158.     As a result of these unreimbursed automobile expenses Defendants have failed to pay Mr. Zachary the minimum wage as required by law.

159.     Defendants also made Mr. Zachary drive to various other locations to such as pick up laundry, make bank deposits, and drop off promotional materials, among other things.  All such mileage was completely un-reimbursed.

160.     During his employment for Defendants Mr. Zachary had occasion to work more than 40 hours in a work week.  When he worked this overtime, Defendants did not pay him overtime wages as required by law, as a result of which Mr. Zachary was damaged.

**Michelle Coffin**

161.     Ms. Coffin works at Defendants' Pizza Hut store in Crawfordsville, Indiana, from 2006 to present.

162.     Ms. Coffin is an hourly, non-exempt employee of Defendants.

163.     As a delivery driver, Ms. Coffin delivers pizza and other food items to Defendants' customers' homes and businesses.

164.     When she is not making deliveries, Ms. Coffin worked inside the restaurant, completing tasks such as taking orders, making pizza, building pizza boxes, taking out trash, sweeping up the food line, mopping and sweeping, and completing other general tasks within the store.

165.     Ms. Coffin is paid Indiana minimum wage for the hours she worked for Defendants for work performed.

166.     Defendants did not record all of Ms. Coffin's expenses she incurred while completing deliveries for them.

167.    Defendants did not reimburse Ms. Coffin at the IRS standard business mileage rate for each mile she drove.

168.    Defendants did not reimburse Ms. Coffin based on a reasonable approximation of her expenses.

169.    Defendants required Ms. Coffin to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, registration, licensing, and financing costs, and other equipment necessary for delivery drivers to complete their job duties.

170.    Pursuant to such requirements, Ms. Coffin purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, registration, licensing, and financing costs, and suffered automobile depreciation all for the primary benefit of Defendants.

171.    Ms. Coffin was reimbursed a range of twenty-eight cents a mile in 2021 to forty cents per mile presently ($0.28 - $0.40) she drove while completing deliveries for Defendants. Further, the system that Defendants' use to track these miles routinely undercounts his actual miles driven.

172.    Ms. Coffin regularly drives approximately six to eight (6-8) miles round trip per delivery.

173.    During 2021, for example, the IRS business mileage reimbursement has been $0.56 per mile, and in 2023 it is $0.655 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates.

174.    Using that IRS rate as a reasonable approximation of Ms. Coffin's automobile expenses, every mile driven on the job decreased her net wages by approximately $0.28 ($0.56 - $0.28 in 2021 and $0.655 - $0.40 per mile in 2023) per mile. Considering Ms. Coffin's estimate of about 7 average miles per delivery, Defendants under-reimbursed her about $1.96 per delivery ($0.28 x 7 average miles).

175.    Ms. Coffin made an average of 12 deliveries per day.

176.    Thus, Ms. Coffin consistently "kicked back" to Defendants approximately $23.52 per day ($1.96 per delivery x 12 deliveries).  Plaintiff's typical shift lasted 8 hours, and thus she kicked back $2.94 per hour, meaning she was paid $4.31 per hour.

177.    As a result of these unreimbursed automobile expenses Defendants have failed to pay Ms. Coffin the minimum wage as required by law.

178.    Defendants also made Ms. Coffin drive to various other locations to such as pick up laundry, make bank deposits, and drop off promotional materials, among other things.  All such mileage was completely un-reimbursed.

179.    During her employment for Defendants Ms. Coffin had occasion to work more than 40 hours in a work week.  When she worked this overtime, Defendants did not pay her overtime wages as required by law, as a result of which Ms. Coffin was damaged.

### IV.    Collective Action Allegations

180.    Plaintiffs bring the First and Second Count on behalf of themselves and all similarly situated current and former delivery drivers employed at the Freeland Enterprises stores owned, operated, and controlled by any of the named Defendants nationwide, including Indiana, during

the three years prior to the filing of the original complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

181.    At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage and overtime wage for all hours worked, and failing to reimburse delivery drivers for automobile expenses and other job-related expenses.  Plaintiffs' claims are essentially the same as those of the FLSA Collective.

182.    Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay and reimburse Plaintiffs and the FLSA Collective.

183.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

184.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

185.    The First and Second Count are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

186.    The FLSA Collective members are readily identifiable and ascertainable.

187.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

188.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

**V.    Class Action Allegations**

189.    Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh, and Eighth Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All similarly situated current and former persons who work or worked as Delivery Drivers for Defendants Pizza Hut stores in Indiana between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

190.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; any individual who settled their claims in the action captioned *Scott v. Freeland, et al.*, Case No. 22-cv-00043-HAB-SLC, and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

191.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are also determinable from Defendants' records.  For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

192.    The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

193.    There are more than 50 Rule 23 Class members.

194.    Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief that would be sought by each Rule 23 Class member in separate actions.

195.    Plaintiffs and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to reimburse for expenses, and failing to pay Plaintiffs in a timely manner.

196.    Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the Indiana wage laws.

197.    Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

198.    Plaintiffs and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

199.    By seeking to represent the interests of the Rule 23 Class members, Plaintiffs are exercising and intend to exercise their right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

200.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

201.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

202.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

203.    Upon information and belief, Defendants and other employers throughout the state violate minimum wage laws.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

204.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

205.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class members individually and include, but are not limited to:

a.    Whether Defendants paid Plaintiffs and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

b.      Whether Defendants failed to reimburse automobile expenses, as described herein, causing Plaintiffs and the Rule 23 Class members' wages to drop below legally allowable minimum wage;

c.      Whether Defendants recorded and reimbursed the actual expenses of Plaintiffs and the Rule 23 Class members;

d.      Whether Defendants reimbursed Plaintiffs and the Rule 23 Class at the IRS standard business mileage rate;

e.      Whether Defendants paid Plaintiffs and the Rule 23 Class all wages due within the timeframe contemplated by Indiana law;

f.      Whether Defendants' policy of failing to pay Plaintiffs and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

g.      The nature and extent of class-wide injury and the measure of damages for those injuries.

206.    In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of a service award upon resolution of this action.

**VI.    Causes of Action**

**<u>Count 1</u>**

**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiffs and the FLSA Collective)**

207.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

208.    Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

209.    Defendants failed to properly claim a tip credit from the wages of Plaintiffs and the FLSA collective because Plaintiffs and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

210.    Defendants required Plaintiffs and the FLSA Collective to pay for automobile expenses out of pocket, failed to reasonably calculate the value of said expenses, and failed to adequately reimburse Plaintiffs and the FLSA Collective for said expenses.

211.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

212.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

213.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 2

### Failure to Pay Overtime Wages – Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

214.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

215.    Plaintiffs and the FLSA Collective worked more than forty hours in one or more workweeks.

216.    Because Defendants required Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay

Plaintiffs and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

217.    By not paying Plaintiffs and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

218.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 3

**Failure to Pay Minimum Wages – violation of *inter alia* Indiana Code § 22-2-2-4*, et seq.*
(On Behalf of Plaintiffs and the Rule 23 Class)**

219.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

220.    Defendants paid Plaintiffs and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses without adequate reimbursement.

221.    Defendants are employers of Plaintiffs and the Rule 23 Class as the term is defined in Indiana Code Title 22 § 22-2-2-3.

222.    By failing to pay Plaintiffs and the Rule 23 Class minimum wage for all hours worked, Defendants have violated *inter alia* Indiana Code Title 22 § 22-2-2-4.

223.    As a result of Defendants' failure to pay Plaintiffs and the Rule 23 Class the wages they are due, Plaintiffs and the Rule 23 Class are entitled to unpaid wages, costs, reasonable attorneys' fees, and interest.

## Count 4

**Failure to Pay Sufficient Tipped Wages – violation of *inter alia* Indiana Code § 22-2-2-4, *et seq.*
(On Behalf of Plaintiffs and the Rule 23 Class)**

224.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

225.    Defendants failed to properly pay Plaintiffs and the Rule 23 Class sufficient tipped wages for hours worked delivering pizza.  By requiring them to cover automobile expenses without adequate reimbursement, and paying them only $4.25 per hour for delivery work, Plaintiffs' combined wage did not mean the minimum wage.

226.    Defendants are employers of Plaintiffs and the Rule 23 Class as the term is defined in Indiana Code Title 22 § 22-2-2-3.

227.    By failing to pay Plaintiffs and the Rule 23 Class sufficient tipped wages for hours worked delivering pizza, Defendants have violated Indiana Code § 22-2-2-4, *inter alia*.

228.    As a result of Defendants' failure to pay Plaintiffs and the Rule 23 Class the wages they are due, Plaintiffs and the Rule 23 Class are entitled to unpaid wages, costs, reasonable attorneys' fees, and interest.

<u>**Count 5**</u>

**Failure to Pay Earned Wages – violation of *inter alia* Indiana Code Title § 22-2-5-1, *et seq.*
(On Behalf of Plaintiffs and the Rule 23 Class)**

229.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

230.    During all relevant times, Defendants were employers of Plaintiffs and the Rule 23 Class were employees within the meaning of Indiana Code Title 22 § 22-2-2-3.

231.    Indiana Code Title 22 § 22-2-5-1 requires that Defendants pay Plaintiffs and the Rule 23 Class wages due at least once every two weeks.

232.    Indiana Code § 22-2-5, *et seq.*, requires that payment shall be made for all wages earned to a date not more than 10 business days prior to the date of payment.

233.    Indiana law permits employees to recover attorney's fees and expenses.

234.    By failing to pay Plaintiffs and the Rule 23 Class all wages due to them under the FLSA and Indiana law, Defendants have violated Indiana law.

235.    Plaintiffs and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than two weeks after they were earned.

236.    In violating Indiana law, Defendants acted willfully, without a good faith basis and with reckless disregard to Indiana law.

237.    As a result of Defendants' willful violation, Plaintiffs and the Rule 23 Class are entitled to unpaid wages, liquidated damages, costs, and attorneys' fees.

## Count 6

**Withholding of Wages – violation of *inter alia* Ind. Code§ 22-2-6*, et seq*.**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

238.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

239.    Ind. Code § 22-2-6-2 limits the type and amount of deductions and assignments are permitted to take from an employee's wages.

240.    Defendants violated Ind. Code § 22-2-6-2 by taking deductions from the wages of Plaintiffs and the Rule 23 Class members for automobile expenses without the prior consent of Plaintiffs and the Rule 23 Class members.

241.    By not paying Plaintiffs and the Rule 23 Class for all hours worked, Defendants violated Ind. Code § 22-2-6.

242.    Defendants did not act in good faith in failing to pay Plaintiffs and the Rule 23 Class their earned wages.

243.    As a result of Defendants' failure to pay Plaintiffs and the Rule 23 Class in accordance with Ind. Code § 22-2-6, Plaintiffs and Rule 23 Class are entitled to unpaid wages, unreimbursed expenses, an additional two times unpaid wages, damages, costs, and attorneys' fees.

**Count 7**

**Failure to pay overtime – violation of *inter alia* Ind. Code§ 22-2-2-4*, et seq*.**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

244.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

245.    Ind. Code § 22-2-6-2 requires that employers may not employ their employee for more than 40 hours in a workweek without paying overtime rates of one and a half times their pay rate.

246.    Defendants violated Ind. Code § 22-2-6-2 by employing the Plaintiffs and the Rule 23 Class for more than 40 hours in a work week and not paying overtime rates of one and a half times their pay rate.

247.    By not paying Plaintiffs and the Rule 23 Class overtime rates, Defendants violated Ind. Code § 22-2-6.

248.    Defendants did not act in good faith in failing to pay Plaintiffs and the Rule 23 Class their overtime wages.

249.    As a result of Defendants' failure to pay Plaintiffs and the Rule 23 Class in accordance with Ind. Code § 22-2-6, Plaintiffs and Rule 23 Class are entitled to overtime wages, unreimbursed expenses, an additional two times unpaid wages, damages, costs, and attorneys' fees.

**Count 8**

**Unjust Enrichment**
**(On Behalf of Plaintiffs and Rule 23 Indiana Unjust Enrichment Class)**

250.    The Rule 23 Indiana Unjust Enrichment Class members at the Defendants' Freeland Enterprises Pizza stores have conferred a benefit on Defendants, at their express or implied request, by requiring the Plaintiffs to use their own cars and cellphones to perform work for Defendants.

251.    Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Indiana Unjust Enrichment Class members.

252.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Indiana Unjust Enrichment Class members without commensurate compensation.

253.    The Rule 23 Indiana Unjust Enrichment Class members expected payment of this benefit.

254.    Plaintiffs and the Rule 23 Indiana Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the two years preceding the filing of this complaint.

**WHEREFORE**, Plaintiffs Denim Zachary and Michelle Coffin pray for all of the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.      Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

E.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and Indiana law.

F.      An award of unpaid minimum wages and unreimbursed expenses due under the FLSA and Indiana law.

G.      An award of prejudgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.


 /s/ Myra R. Reid
Myra R. Reid  (#35583-71)
ANDERSON AGOSTINO & KELLER, PC
131 S. Taylor Street
South Bend, IN  46601
574-288-1510
574-288-1650  (fax)
reid@aaklaw.com

*Counsel for Plaintiffs*