**In the United States District Court**
**for the Northern District of Indiana**

| | |
|---|---|
| Denim Zachary,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Freeland Enterprises, Inc., RFJ Trust I, Freeland Group Restaurants, Hut Diggity, Deanna Freeland, Todd Hollman, Tyler Freeland, John Doe Corporation 1-10, and John Doe 1-10;<br><br>Defendants. | Case No. 3:23-cv-00948<br><br>Judge Cristal C. Brisco |

Brief in Support of
Motion for Partial Summary Judgment

Table of Contents

Table of Authorities....................ii

1. Introduction....................1

2. Facts....................2

3. Summary Judgment Standard....................4

4. Argument....................4

    4.1 Legal Framework....................5

        4.1.1. Employers Must Pay a Minimum Wage....................6

        4.1.2. Employers Must Keep Records....................8

    4.2. Liability Analysis....................10

5. Conclusion....................14

Table of Authorities

**Cases** Page(s)

*Anderson v. Mt. Clemens Pottery Co.*
328 U.S. 680 (1946)……………………………………………………………..…5, 9

*Arriaga v. Fla. Pac. Farms, L.L.C.*
305 F.3d 1228 (11th Cir. 2002)…………………………………………….…………..7

*Barrentine v. Arkansas-Best Freight Sys., Inc.*
450 U.S. 728 (1981)…………………………………………………………………….5

*Bradford v. Team Pizza*
2021 U.S. Dist. LEXIS 200773 (S.D. Ohio Oct. 19, 2021) ……………………………..7

*Brandenburg v. Cousin Vinny's Pizza, LLC*
2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 6, 2018)……………………….…………7

*Caserta v. Home Lines Agency, Inc.*
273 F.2d 943 (2nd Cir. 1959)……………………………………………………..………..5

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)…………………………………………………………..……….4

*Craig v. Bridges Bros. Trucking LLC*
823 F.3d 382, 389 (6th Cir. 2016)…………………………………….…………………9

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*
776 F. Supp. 2d 117 (E.D.N.C. 2011)………………………………...……………12

*Hatmaker v. PJ Ohio, LLC*
2019 U.S. Dist. LEXIS 191790 (S.D. Ohio Nov. 5, 2019)……………………….………7, 9

*Keller v. Miri Microsystems, LLC*
781 F.3d 799 (6th Cir. 2015)………………………………………………………………5

*Kennedy v. Mountainside Pizza, Inc.*
2020 U.S. Dist. LEXIS 154792 (D. Colo. Aug. 26, 2020)………………………………7

*Kisor v. Wilkie*
139 S. Ct. 2400 (2019)……………………………………………………………7

*Lahoti v. VeriCheck, Inc.*
586 F.3d 1190 (9th Cir. 2009)…………………………………………….……..…..4

*Maldonado v. La Nueva Rampa, Inc.*
2012 U.S. Dist. LEXIS 67058 (S.D. N.Y. May 14, 2012)………………………………11

*Monahan v. County of Chesterfield*
95 F.3d 1263 (4th Cir. 1996)…………………………………………….………..7

*Myers v. Copper Cellar Corp.*
192 F.3d 546, 554 (6th Cir. 1999)…………………………………………………10

*Parker v. Battle Creek Pizza, Inc.*
600 F. Supp. 3d 809 (W.D. Mich. 2022) …………………………………………7

*Parker v. Battle Creek Pizza, Inc.*
95 F4th 1009 (6th Cir. 2024)...........................................................................*passim*

*Randolph v. ADT Sec. Servs.*
2011 U.S. Dist. LEXIS 87464 (D. Md. Aug. 8, 2011)... … … … … … … ….. … … … … ….…5

*Waters v. Pizza to You, LLC*
2021 U.S. Dist. LEXIS 87604 (S.D. Ohio May 7, 2021)………………………………7

*Wilson v. Marlboro Pizza, LLC*
2023 U.S. Dist. LEXIS 74288 (D. Md. Apr. 27, 2023)………………………….…1, 6

**Statutes**

9 U.S.C. § 206…...........................................................................................................6

29 U.S.C. 211(c)…………………………………………………………………..…….8

**Rules**

Fed. R. Civ. P. 56 .......... 2

**Regulations**

29 C.F.R. 516.2(a)(10) .......... 8

29 C.F.R. 516.6(c)(2) .......... 8

29 C.F.R. § 531.35 .......... 1, 7, 11

**Other Authorities**

Dep't of Labor Handbook § 30(c)(12)(b) .......... 11

**MEMORANDUM IN SUPPORT**

## 1. Introduction

A critical feature of the Fair Labor Standards Act is the guarantee set by its minimum-wage provisions: Employers cannot pay their workers below a fixed compensation floor. This floor is a precise number – it is literally a minimum wage.

Normally, the employer supplies a worksite and the tools of the job. In that situation, the application of the FLSA is straightforward. However, when an employer shifts expenses onto its workers, the unreimbursed costs of such tools must be factored into the minimum wage calculation. *See* 29 C.F.R. § 531.35. In other words, the employee's wages must be delivered "free and clear" or "finally and unconditionally" for a worker's own benefit—not in some way clawed back for an employer's benefit. *Id; Parker v. Battle Creek Pizza, Inc.*, 95 F4th 1009 (6th Cir. 2024) [hereinafter "*Parker II*"].

Food delivery companies, like Defendants, shift their largest capital expense—a fleet of gassed, insured, and regularly-maintained vehicles, ready to deliver food for their business—to their tipped minimum wage workers. In no other industry would this be seen as anything other than gross exploitation.

The benefits to the employer are significant, and the burden placed on the minimum wage delivery drivers is high. The very nature of their job, delivery driving, exacts higher costs in gasoline and repair and maintenance work than typical driving. *Wilson v. Marlboro Pizza, LLC*, 2023 U.S. Dist. LEXIS 74288, at *2 (D. Md. Apr. 27, 2023).

Additionally, by shifting this burden to their minimum wage employees, Defendants do not need to spend the capital required to buy, gas, and maintain a fleet of vehicles. And, Defendants gain enormous flexibility because they can shrink and grow their fleet at will by

hiring, and scheduling drivers as it sees fit. Defendants need not store and protect the vehicles when not in use—the employees take on those risks and burdens. Further, Defendants expect most or all of that work to occur off-the-clock, on the workers' own time, to maintain and fuel the cars – for their benefit.

Under the FLSA and its corresponding regulations, Defendants' pay practices (paying a tipped minimum wage and under-reimbursing the vehicle costs) are unlawful and they are liable for the same.

As a result of the same, at this time Plaintiff moves for an order for partial summary judgment pursuant to Rule 56 asking this Court to enter a finding of liability on the Plaintiff's behalf. Because the parties have consented that Defendants will simultaneously be moving to decertify the conditional class members, Plaintiff at this time does not move for summary judgment on their behalf. But considering the policies discussed herein apply class-wide, Plaintiff reserves his right make an identical application for the certified class should the Court decline to decertify it.

**2. Facts**

Defendants are the employers of Plaintiff who own and operate the Pizza Hut pizza delivery store where Mr. Zachary worked as a delivery driver. *See generally* Defendants' Interrogatory Responses, attached as Exhibit A (ECF 75-2 at 3); Defendants' formal response attached as Exhibit B (ECF 75-3 at 3). Mr. Zachary used his personal vehicle to deliver food for the Defendants' business. *See* Plaintiff's Interrogatory Responses, attached as Exhibit C (ECF 75-4 at 3-6); Defendants' Document Production attached as Exhibit D (ECF 75-5 at DEF 000138; 000185 ("Minimum qualifications…must use his/her own personal vehicle and the

vehicle should be in good condition."). Defendants imposed upon Plaintiff various vehicle maintenance and safety requirements in order to work on their behalf. *Id*. at DEF 000143 (cars are inspected daily "evaluat[ing] the functionality of the tires, rear view mirrors, horn, break lights, turn signal, headlights, and cleanliness").

Defendants paid Mr. Zachary a tipped wage while he was on the road making deliveries. *Id*. at 00002-000012. During the course of Mr. Zachary's employment with Defendants, Mr. Zachary also received a per mile reimbursement for his vehicle expenses. *See generally* Exhibit A (ECF 75-2 at )6; Exhibit D (ECF 75-5 at DEF 000001). Based on the Defendants' data, the Defendants reimbursed Mr. Zachary between $.28 and $.37 per mile. *Id*.

However, the reimbursement rate was not based on Mr. Zachary's vehicle at all. Defendants never collected records of Mr. Zachary's vehicle expenses for purposes of determining the reimbursement rate, and instead approximated their vehicle expenses. *See* Defendants' Response to Requests for Admission, attached as Exhibit E (ECF 75-6 at 1) ("Defendants admit that one or more of the Defendants approximated delivery drivers' vehicle expenses based, in part, on the methodology provided by MOTUS."). In fact, Defendants did not even try to find out what Mr. Zachary's actual expenses were. *Id*. at page 2 ("Defendants admit that they did not have knowledge of each of the delivery drivers' actual daily expenses.").

Instead, Defendants relied on a general rate provided by a third-party (MOTUS) to come up with an approximate reimbursement rate for each of their delivery drivers. *See id* at page 1. *See also* Exhibit D (ECF 75-5 at DEF000001; 000170-183).

MOTUS is in the business of selling "reimbursement rates" to companies like Defendants. *See* Motus | Mobile Workforce Reimbursements, Simplified. Those rates are

designed to save the companies money while providing legal cover and plausible deniability when the company is, as here, challenged on their reimbursement policy.

It is also worth noting that there is a financial incentive for MOTUS to underestimate vehicle costs. The lower the MOTUS rates, the more likely MOTUS will be viewed positively by its customers, pizza franchisees, who save money by using lower rates. Low rates are a "win-win" for MOTUS and its customers, to the detriment of drivers like Plaintiff.

### 3. Summary Judgment Standard

One of the "principal purposes" of summary judgment is to isolate and dispose of issues and factually unsupported defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Without weighing the evidence or determining credibility, the court may grant summary judgment when no genuine issue of material fact exists as to an issue and the movant is entitled to judgment as a matter of law. *Id.* [P]artial summary judgment "'serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no issue of fact.'" *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 n.9 (9th Cir. 2009) (citing with approval then-existing Fed. R. Civ. P. 56(d)'s advisory committee note).

### 4. Argument

In the instant matter, there is no material question of fact that liability must be imposed against the Defendants because they unlawfully tried to "reasonably approximate" the Plaintiff's expenses. Mr. Zachary has estimated that his actual expenses dwarf what he was reimbursed, and Defendants cannot rebut this presumption. A finding of liability is necessary at this time.

Damages can be addressed at a trial. As a preview, there remain two approaches to damages: either this Court may apply the difference between Mr. Zachary' approximated

expenses and the reimbursement supplied, or the IRS rate and the reimbursement supplied. Plaintiff contends the greater of the two is more appropriate provided Defendants' violations of law.

**4.1. Legal Framework**

Fair Labor Standards Act jurisprudence is the roadmap to analyze this case. Congress enacted the FLSA in 1938 "with broad remedial intent" to address "unfair method[s] of competition" that cause "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 806 (6th Cir. 2015); 29 U.S.C. § 202(a). *See also*, *Randolph v. ADT Sec. Servs*., 2011 U.S. Dist. LEXIS 87464, at *10 (D. Md. Aug. 8, 2011). To accomplish this goal, the FLSA affords "specific minimum protections to individual workers" through a minimum wage and maximum hours rules. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).

The FLSA is a strict liability statute:

> The obligation [of complying with the FLSA] is the employer's and it is absolute. He cannot discharge it by attempting to transfer his statutory burdens of accurate recordkeeping * * * and of appropriate payment, to the employee.

*Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2nd Cir. 1959).

Accordingly, the risk of non-compliance "must fall solely on the employer." *Parker II* at 1016. It is no defense to say compliance is difficult or even "impossible." *Id.* Likewise, it is no defense for an employer to say that it made a bona fide mistake about how to comply with the FLSA. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946). The "employer, having received the benefits of such work, cannot object to the payment for the work." *Id.*

The level of exactitude that courts hold employers to makes sense. The FLSA is dealing with *minimum* wage and protecting America's most vulnerable workers. If an employer wants to pay close to this line, they need to dot every "i" and cross every "t." The risk of non-compliance "must fall solely on the employer." *Parker II* at 1016.

Of course, an employer can avoid all these issues by simply paying more than the bare minimum statutory wage and, in this case, not foisting the primary costs of its business on low-wage workers.

**4.1.1. Employers Must Pay a Minimum Wage**

The keystone FLSA protection is the imposition of a minimum-wage floor, mandating that employers pay a minimum hourly wage of at least $7.25 per hour. 29 U.S.C. § 206(a).[1] Employers must pay employees this statutorily set minimum wage "to the penny." *Parker II* at 1016. Additionally, those wages must be paid "free and clear." *Id.*; 29 C.F.R. 531.35.

Known as the "free and clear" or anti-kickback regulation, 29 C.F.R. 531.35 bars employers from cutting into minimum wage or overtime wages with "kick-backs"—requirements that directly or indirectly force workers to return part of their statutorily guaranteed wage. *Wilson*, 2023 U.S. Dist. LEXIS 74288, at *4-5. Specifically:

> The wage requirements of the [FLSA] will not be met where an employee "kicks back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum wage or overtime wages required to be paid [to] him under the Act. 29 C.F.R. 531.35.

[1] Plaintiff also brought a minimum wage claim under state law (Indiana Code § 22-2-2-4, *et seq*). Because the law parallels and mirrors the FLSA, the same analysis applies; the claims can be analyzed together.

There "is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear." *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002). Either way, the cost is a "kickback" that reduces an employee's wage. 29 C.F.R. 531.35.

In the instant matter, courts have consistently held that vehicles are "tools of the trade" whose costs act as a "kick-back" and, as a result, employers must reimburse drivers for them. *See, e.g., Hatmaker v. PJ Ohio, LLC*, 2019 U.S. Dist. LEXIS 191790, at *7 (S.D. Ohio Nov. 5, 2019).

The question of "how much," however, has perplexed courts for the last decade.[2]

In *Parker II*, the Sixth Circuit addressed this issue in a consolidated appeal and provided substantial clarity to this space. The Sixth Circuit rejected the Defendants' "reasonable approximation" approach argument and the premise upon which it relies. Specifically, it held that section 778.217 does not apply to minimum wage compliance. *Id; see also Monahan v. County of Chesterfield*, 95 F.3d 1263, 1280 (4th Cir. 1996). Instead, only 29 C.F.R. § 531.35, the Anti-Kickback Regulation, applies.

[2] Prior to *Parker II,* there was a robust series of case law that struggled with this question. Some courts applied agency deference under *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) in analyzing the vehicle expense reimbursement question. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, 2018 U.S. Dist. LEXIS 189878, at *20 (S.D. Ohio Nov. 6, 2018); *Waters v. Pizza to You, LLC*, 2021 U.S. Dist. LEXIS 87604 (S.D. Ohio May 7, 2021); *Parker v. Battle Creek Pizza, Inc.*, 600 F. Supp. 3d 809 (W.D. Mich. 2022) ("*Parker I*"), reversed and remanded, *see Parker II*, *supra*. Under *Kisor* deference, these courts held that the FLSA and its regulations were "genuinely ambiguous" and they deferred to the Department of Labor's reasonable interpretation of its own regulations announced in the DOL Field Operations Handbook which provided for reimbursement at the IRS business rate. *See* Handbook § 30c15 (emphasis in original). In contrast, other courts held that employers could "reasonably approximate" vehicle expenses without reference to their actual costs. *See Kennedy v. Mountainside Pizza, Inc.*, 2020 U.S. Dist. LEXIS 154792 (D. Colo. Aug. 26, 2020). *See also Bradford v. Team Pizza*, 2021 U.S. Dist. LEXIS 200773 (S.D. Ohio Oct. 19, 2021) ("*Bradford I*"). This created a split of authority within the Sixth Circuit, and the plaintiff appealed the decision to the Sixth Circuit. *Bradford v. Team Pizza*, 2022 U.S. Dist. LEXIS 43382 (S.D. Ohio March 7, 2022) ("*Bradford II*"); *In re: Michael Bradford, on behalf of himself and those similarly situated*, No. 22-0304 (6th Cir. June 27, 2022). This appeal was later consolidated with defendants' interlocutory appeal of the decision *Parker I*; *Bradford v. Team Pizza, Inc.* (No. 22- 3561) and *Parker v. Battle Creek Pizza, Inc.* (No. 22-2119).

*Parker II* does not provide instruction on how to calculate vehicle expenses as a question of damages in litigation. However, concerning liability, the Sixth Circuit emphasized employers cannot do what Defendants try to do here: "reasonably approximate" "us[ing] lowball estimates of drivers' costs and then leave it to them to prove those estimates wrong." *Parker II* at 1018. The Sixth Circuit made it clear that the situation presented in this case "threatens to impair the benefits of" the FLSA. *Id.*

When addressing the IRS rate, *Parker II* limited its inquiry to whether *Auer*/*Kisor* deference would apply, finding that such deference does not apply because: (1) the statute and regulation are unambiguous and (2) the Field Operations Handbook is "enforcement guidance," not "interpretive guidance." The Sixth Circuit did not address whether *Skidmore* deference to the Handbook would apply in litigation.

**4.1.2. Employers must keep records**

Another FLSA requirement is that employers must "make, keep, and preserve" records of the "wages, hours *and other conditions and practices of employment maintained by*" the employer. 29 U.S.C. 211(c) (emphasis added).

This includes the total "additions to or deductions from wages." 29 C.F.R. 516.2(a)(10).

For each employee, employers must keep records of the "dates, amounts, and nature of the items which make up the total additions and deductions." *Id.* Those records must include "[a]ll records used by the employer in determining the original cost, operating and maintenance cost, and depreciation and interest charges, if such costs and charges are involved in the additions to or deductions from wages paid." 29 C.F.R. 516.6(c)(2).

In the delivery driver context, this obviously means records of the "original cost" of each

worker's vehicle, and all of those costs that go into "operating and maintenance" of the vehicle.[3] *Id.* Without these records, there would be no way to do what is required: reimburse each employee "100% of the cost" of vehicles, "not a 'reasonable approximation' thereof." *Parker II*, at 1016.

The FLSA's recordkeeping rules protect workers because employees "seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy." *Anderson*, 328 U.S. at 687.

Thus, pivotally, an employee does not need to prove his case through his own records. Instead, "[w]hen the employer has kept proper and accurate records, the employee may easily discharge his burden by securing production of those records." *Id.*

When neither party has records, however, "a more difficult problem arises." *Id.* In that situation, courts relax the burden of proof and allow employees to approximate their damages "as a matter of just and reasonable inference." *Id. See also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). To do otherwise "would place a premium on an employer's failure to keep proper records." *Id.*

Once the employee does so, the employer has a limited ability to rebut the employee's inference. The employer can only rebut the inference "with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88.

In other words, the law does not put workers and employers on equal footing. Employers

[3] "In the pizza delivery driver context, a reasonably diligent employer must in some manner maintain records of vehicle costs, even if the FLSA and Regulations did not already require the employee to do so." *Hatmaker*, 2019 U.S. Dist. LEXIS 191790, at *20; *citing Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 389 (6th Cir. 2016).

have a substantial burden to rebut a worker's inference. Employers must present evidence of the *precise* amount of work. *Id.* The only alternative is for an employer to show that the employee's inference is unreasonable. *Id.* at 688. Showing an alternative or even better theory of damages is not good enough; the employer must prove the employee's inference is unreasonable. *See id.*

This difficult standard is appropriate because, for it to arise at all, the employer has already broken the FLSA's recordkeeping rules.

> The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with * * * the Act.

*Id.* The standard applies even if the employee made "a bona fide mistake" about their FLSA obligations. *Id.*

When it comes to employers, like Defendants, who claim a tip credit *and* shift expenses on to employees, the employer has an even greater burden. *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999). In that situation, the employer bears the burden to "prove its total deductions from employees' tip incomes did not enrich it, but instead, at most, merely restored it to the approximate financial posture it would have occupied if it had not undertaken to [impose the deduction]." *Id.*

### 4.2. Liability Analysis

For over a decade, litigants in pizza delivery driver cases ignored how reimbursement for tools of the trade work in every other area of the FLSA. Instead of addressing the purchase price and maintenance costs/time, litigants have argued for "mileage rates" and then argued over what those rates should be.

The *Parker II* decision instead made clear that the law requires Defendants to reimburse each employees' actual costs and to keep records of the same. Cars are no different than any

other "tool of the trade." *See supra* at pages 3-5. As a result, if an employer requires an employee to use his or her own vehicle, then the employer must reimburse the employee for "the cost of such tools" "to the penny", and keep records of those expenses and reimbursements. 29 C.F.R. § 531.35; *Parker II* at 1016.

What happens when an item requires upkeep or maintenance? In those situations, the employer must both pay the purchase price for the item *and* the maintenance costs, which may include a measure of the time spent maintaining the item. *See, e.g., Maldonado v. La Nueva Rampa, Inc.*, 2012 U.S. Dist. LEXIS 67058, at *24 (S.D. N.Y. May 14, 2012).

For example, the DOL's enforcement guidance on uniforms requires employers to pay employees to maintain/launder the uniforms if they require special treatment (daily laundering, ironing, etc.). Handbook §30(c)(12)(b). Like the DOL's guidance on vehicle expenses, the DOL allows employers to reimburse the actual costs or an amount that the DOL sets, in that case $3.35 per week or $.67 per day. *Id.* §30(c)(12)(b)(3).

These rules are the same in the context of vehicles, which have both a purchase price *and* maintenance costs. For example, delivery by bicycle and motorbike is common in New York City, giving rise to cases analyzing the arrangement. Those cases hold that employers must reimburse delivery drivers for the purchase price of the vehicle and the maintenance costs. *See, e.g., Maldonado*, 2012 U.S. Dist. LEXIS 67058, at *25–26. This included costs like the purchase price and repairs for bicycles and motorbikes. *Yu G. Ke*, 595 F. Supp. 2d 240, 266 (S.D. N.Y. 2008).[4]

And it includes the price of expensive replacement vehicle parts, which must be

[4] For example, in *Yu G. Ke*, the Court awarded Plaintiff Bao Guo Xie $9,185.15 as reimbursement for his bicycle and motorbike purchases and repairs. This amount included $900 for purchased bicycles, $2,500 for a motorbike, with the remainder coming from repairs and gasoline for the motorbike.

reimbursed in the week in which they were purchased. *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 300–01 (E.D. N.Y. 2013). *See also Gaxiola v. Williams Seafood of Arapahoe, Inc.,* 776 F. Supp. 2d 117, 125 (E.D.N.C. 2011) ("[F]ailing to reimburse plaintiffs for their expenditures is equivalent to the employer paying for these expenses and then improperly deducting them from the employees' pay for the first workweek. *Id.* Known as a de facto deduction, "there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear.")

Here, there is no question of fact that the Defendants have violated the FLSA two times over: (1) they did not pay the Plaintiff's actual costs for the purchase price of his car, his gasoline expenses, or his operational costs, including insurance, registration, and repairs; and (2) they did not keep records of the same. *See supra* at pages 3-5.

There is no question of fact that they instead claim that they approximated Mr. Zachary's costs. Exhibit E (ECF 75-6 at 1) ("Defendants admit that one or more of the Defendants approximated delivery drivers' vehicle expenses based, in part, on the methodology provided by MOTUS."). They further admit they used the same "low ball estimate" provider MOTUS that was discussed in *Parker* which applied the same amount to every driver, regardless of miles driven or costs incurred. *Id*. at page 2.

Provided the same, the FLSA is to be applied as written. There is no "close enough" way to comply with the FLSA. It is a strict liability statute that requires an employer's "absolute" compliance to ensure wages be paid "to the penny." *Parker II* at 1016.

When an employer does not comply with the FLSA's remedial mandates, sometimes the result can seem "harsh." *See Reich v. Chez Robert, Inc*, 28 F.3d 401, 404 (3rd Cir. 1994). But, as *Parker II* notes, the employers chose to reap the benefits of paying low wages and then

demanding that their workers provide expensive vehicles. *Parker II* at 1016. *See also supra* at pages 9-11. The risk of those business choices, however, "must fall solely on the employer." *Id.*

Nor is reimbursing each employee for his or her vehicle's purchase price and maintenance an employer's only option:

> [E]mployers themselves created this situation: first by paying their drivers the bare minimum wage; then by requiring them to provide their own vehicles to deliver pizzas on the defendants' behalf; and finally, by cutting it close (at least according to the allegations here) as to whether they have adequately reimbursed their drivers for the cost of providing those vehicles.

*Parker II* at 1016. Defendants and other employers always have the option to buy their own vehicles and supply it to Mr. Zachary to deliver food for them.

Because Defendants elected to violate the law by paying the minimum wage, *and* not keeping records of their employees' actual costs, *and* not reimbursing the same, *Parker* then held that the Plaintiff must approximate their costs by "a matter of just and reasonable inference." *Id.*

In this case, Mr. Zachary has submitted direct testimonial evidence that approximated the expenses for his vehicle while working for Defendants is $11,942 from in or about January 2020 through February 2022. Exhibit C (ECF 75-4 at 4-5).

This includes, at least, the purchase price of $3,400, gasoline expenses of $4,680, and operating costs of $3,862. *Id*.

Pursuant to *Parker*, the Defendants now "bear[s] the burden of showing that [their] reimbursement bore a demonstrable relationship to the employee's actual cost." *Parker* at page 689. They must do so "*with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence*." *Id.* at 687–88 (emphasis added).

Defendants however only reimbursed Plaintiff only $4,169.14. Exhibit D (ECF 75-5 at DEF

000001).[5] This is alone less than what the Plaintiff estimates he spent on fuel.

There is simply no material question of fact that the Defendants can show that this "reimbursement bore a demonstrable relationship" to Mr. Zachary's *actual costs*, or otherwise "negative the reasonableness of the inference to be drawn from the employee's evidence." This is because Defendants do not now, and have not ever, evaluated or collected any data at all on his "actual costs."

Defendants nor their experts MOTUS ever asked for or collected information about the purchase prices of the Plaintiff's car; or her gasoline expenses; or her operational costs. *See supra* at pages 3-5. They have not a shred of evidence of what they are. Their whole scheme to this is to avoid these questions and pay MOTUS to "low ball" that number for them. *See* Exhibit B at page 3.

Concomitantly, Mr. Zachary has approximated that his expenses are multiples of the reimbursements that the Defendants provided. Because Defendants have no evidence at all concerning whether their reimbursement "bore a demonstrable relationship" to the Plaintiff's approximated costs, the inquiry can end here – pursuant to *Parker*, a finding of liability is appropriate at this point.

5. **Conclusion.**

With the above analysis in mind, this Court can now enter a finding of liability on the Plaintiff's behalf. There simply is no question of fact that their reimbursement scheme as applied to Mr. Zachary was doubly unlawful.

The question remaining is which measure of reimbursement and calculation of damages should apply in this case? The best answer is whichever is the greater of the two.

The plain language of the FLSA dictates that an employer must reimburse its employee for

---

[5] Defendants provided an Excel version of this PDF, which Plaintiff used the =SUM formula to tabulate the total reimbursement. A copy of that Excel spreadsheet with that tabulation is attached as Exhibit F (ECF -7).

the actual costs of the employee's vehicle when, as here, the employer pays the employee a tipped minimum wage. Further, employers are not permitted to thwart their record keeping obligation and then create a "reasonable approximation" to reimburse their delivery drivers for the use of their vehicles if that reimbursement is below the IRS business mileage rate.

As directed by the Sixth Circuit in *Parker*, the Plaintiff may prove some or all of their expenses by "indirect evidence" that establishes a "prima facie case". Here, the Plaintiff provided direct testimonial evidence showing that his expenses totaled approximately at least $11,942, including the approximate purchase price of his car; how much he would spend on gas per pay period; and how much it cost to operate his car, including insurance, regular maintenance, and specific charges. *See supra* at pages 3-5; 11-15; *see also* Exhibit C (ECF 75-3 at 4-5). This estimate is greater than the sum he was reimbursed.

To the extent this approximation is incomplete, the IRS rate can be used as a reliable substitute for employers nationwide. The Court can wholly rely upon the DOL's guidance and measure Defendants' reimbursement rate against the IRS rate, as have a host of courts and tribunals prior to *Parker*.

At trial a jury can take and hear evidence, and then decide which is the more appropriate metric of damage.

The one result that cannot be accepted is that the Defendant can "approximate" expenses and then leave it to low-wage workers to prove it wrong. *Parker II* at 1018-1019. Doing so is not consistent with the FLSA's mandates or binding Supreme Court case law.

Based on the foregoing, Plaintiff asks the Court to hold that he may prove his damages by reference to either his estimated actual expenses or, in lieu of that, he may prove his damages by reference to the IRS rate.

Date: March 14, 2025

Respectfully submitted,

*/s/ Myra R. Reid*

Michael P. Misch (27970-71)
Myra R. Reid (35583-71)
ANDERSON, AGOSTINO & KELLER, P.C.
131 South Taylor
South Bend, Indiana 46601
Phone: 574-288-1510
Fax: 574-288-1650
*Counsel for Plaintiff*

*/s/ Frank Raimond*

Frank Raimond
RAIMOND & STAINES, LLC
305 Broadway, 7th Floor
New York, NY 10007
Phone: 212-884-9636
*Counsel for Plaintiff*

Certificate of Service

I hereby certify a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Date: March 14, 2025

*Myra R. Reid*
Myra Reid

*Frank Raimond*
Frank Raimond