IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Denim Zachary,<br>*On behalf of himself and those similarly situated*,<br>Plaintiff,<br>v.<br>Freeland Enterprises, Inc., *et al.*;<br>Defendants. | Case No. 3:23-cv-00948-CCB-SJF |

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO CERTIFY ORDER (DOC. 92) FOR INTERLOCUTORY APPEAL

Plaintiff Denim Zachary respectfully asks this Court to certify its recent Order (Doc. 92) for interlocutory appeal. Although interlocutory appeals are disfavored, this case warrants such an appeal: the Court ruled on controlling, contestable issues of law and if just one of those issues is reversed, it could meaningfully advance the case toward a conclusion.

This case also presents a unique circumstance that weighs heavily in favor of certifying an immediate appeal. The Court's Order holds that 300+ low-wage workers may not proceed collectively under the FLSA. Requiring the parties to proceed in this manner without an opportunity to appeal will impose an extreme burden on vulnerable workers. That burden could be obviated with an appeal. Under these circumstances, an immediate appeal is consistent with Fed. R. Civ. P. 1's mandate to construe rules so that parties can secure a just, speedy, and inexpensive determination.

**1. Background**

Plaintiff Denim Zachary is a low-wage pizza delivery driver. He alleges that, after accounting for his vehicle expenses, Freeland Enterprises, Inc., a Pizza Hut franchise, paid him less than minimum wage. *See* Amended Complaint, Doc. 12, pp. 15-21. On October 30, 2023, Mr. Zachary filed a lawsuit on behalf of himself and his fellow drivers.[1] Doc. 1.

**1.1. Plaintiff's Motion for Partial Summary Judgment**

On March 14, 2025, Mr. Zachary filed a Motion for Partial Summary Judgment. Doc. 75, 76. He requested the Court enter a finding of liability in his favor, with damages to be determined later. Doc. 76, pp. 14–15. To support his Motion, Mr. Zachary alleged that he incurred vehicle costs of approximately $11,942 over the course of the year+ he worked for Freeland. Doc. 76, p. 18.[2] This total was based on the following individual items:

| **Expense Type** | **Total** |
|---|---|
| Vehicle Purchase Price | $3,400 |
| Fuel | $4,680 |
| Insurance | $684 |
| Air Filters | $120 |
| Coolant | $468 |
| Oil Changes | $300 |
| Brakes | $180 |
| Alignment | $180 |
| Ignition Coils | $340 |
| Battery | $100 |
| Tires | $420 |
| Registration | $80 |
| Serpentine Belt | $30 |
| Diagnostic Exams | $300 |
| Sensor Replacement | $180 |
| Air Conditioning | $120 |
| Brake Hoses | $120 |

[1] This is at least the second lawsuit against Freeland for similar pay practices. *Scott v. Freeland Enterprises, Inc., et al*, Case No. 1:22-cv-00043. *Scott* settled for $600,000 for 347 drivers. *See* Scott, Doc. 83 (Order approving settlement).

[2] Page numbers throughout refer to the blue ECF page numbers, not the page numbers at the bottom of the page.

| | |
|---|---|
| Tire Rotation | $240 |
| **Total** | **$11,942** |

*See* Doc. 76, p. 18, *citing* Ex. C,[3] pp. 4–5. Mr. Zachary estimated that approximately 90% of the miles he drove during the time of his employment was for Freeland. *See* Ex. C, Doc. 75-3, pp. 5 (interrogatory responses 5 and 6). There are at least a few ways to consider these costs:

> (1) The employer is responsible for the entire cost of the tool of the trade, even if the employee sometimes uses the tool for personal use. In that case, Mr. Zachary's expenses are **$11,942**;
>
> (2) The employer is only responsible for the percentage of the costs attributable to his employment (in this case, 90%). In that case, Mr. Zachary's costs are **$10,747**;
>
> (3) As the Court held (Doc. 92, pp. 14-15), the employer is not responsible for the purchase price and only responsible for the percentage of costs attributable to employment. In that case, Mr. Zachary's costs are **$7,687**. This would under-estimate the expenses because depreciation is a component of costs. Doc. 92, p. 20.

During the relevant time period, Mr. Zachary drove approximately 13,491.7 miles for Freeland. *See* Ex. D, Def000001 (listing miles and reimbursements by pay period). Thus, his costs per mile were $0.885 (calculation 1), $0.797 (calculation 2), or $0.57 (calculation 3). These amounts are relatively comparable to the IRS rates in place at the time ($0.56–$0.585).

Regardless of which calculation was used, Freeland only reimbursed Mr. Zachary **$4,169.14.** Doc. 76, p. 18, citing Ex. D. Thus, Mr. Zachary argued that the Court should hold Freeland liable, with the specific amount of under-reimbursement to be determined later. *Id.* at pp. 19–20. Even a single dollar of under-reimbursement would trigger FLSA liability.

Most of Freeland's opposition to Mr. Zachary's Motion argued the legal standard and what *Parker v. Battle Creek* meant. *See*, Doc. 81, referencing *Parker v. Battle Creek Pizza, Inc.* 95 F. 4th

[3] Although the Motion correctly referenced Exhibit C, *i.e.*, the third exhibit, it incorrectly cited Doc. 75-4 instead of 75-3. Unfortunately, Mr. Zachary made the same scrivener's error throughout his Motion: the exhibit number is correct, but the document reference is one higher than it should be (*i.e.*, a 3 is cited as a 4).

1009 (6th Cir. 2024). The one thing Freeland did not do, however, was rebut Mr. Zachary's estimates, other than calling them "absurd." Doc. 81, p. 9. Freeland did not depose Mr. Zachary to challenge his estimates, nor did Freeland provide anyone to dispute his estimates.

The Court denied Mr. Zachary's Motion for Partial Summary Judgment. Doc. 92.

### 1.2. Defendant's Motion to Decertify the FLSA Collective Action

On April 12, 2024, the Parties filed a Joint Motion and Stipulated Agreement to send notice to Defendants' delivery drivers employed during the relevant time period and who had not signed an arbitration agreement. *See* Joint Mtn to Resolve Mtn to Send Notice, Doc. 26. On June 4, 2024, the Court granted the Motion to Send Notice, subject to the requested editing of the proposed notice. Doc. 37. The revised notice was approved on August 13, 2024 Doc. 43.

The same day that Mr. Zachary filed his Motion for Partial Summary Judgment, Freeland filed a Motion to De-certify the FLSA collective. Doc. 77, 78. Freeland made two overarching arguments: (1) the drivers incurred different actual expenses, and (2) the drivers cannot rely on any generalized estimates of expenses. Doc. 78. Notably, Freeland did not reimburse anyone for their actual expenses or even try to determine what those expenses were. Doc. 76, p. 3, citing Defendants' Responses to Requests for Admission ("Defendants admit that they did not have knowledge of each delivery driver's actual daily expenses"). Instead, Freeland hired a third-party in the business of providing generalized estimates aimed at saving companies, like Freeland, money in reimbursements. *Id.*; Doc. 78, p. 4.

Mr. Zachary argued Freeland's Motion was premature because it was filed at the beginning of discovery, rather than the end. See Doc. 84, p. 10. Additionally, he argued that Freeland's primary argument about vehicle expense differences or different reimbursement rates has been

rejected by virtually every court considering either FLSA conditional certification or the more stringent Rule 23 class certification. *Id.*, at pp. 4–5 (citing cases).

On August 6, 2026, the Court granted Defendants' Motion to Decertify. Doc. 92.

**2. Argument**

To certify an Order as immediately appealable, the Court must find that five conditions are met: "[T]here must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation. There is also a nonstatutory requirement: the petition must be filed in the district court within a reasonable time after the order sought to be appealed." *U.S. Steel Corp. v. Summit, Inc.*, 2026 U.S. Dist. LEXIS 80144, at *4 (N.D. Ind. Apr. 13, 2026) (emphasis in original), citing, 28 U.S.C. § 1292(b); *Ahrenholz v. Bd. of Tr. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). Interlocutory appeals are appropriate when "extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions." *Id.* at 676, (quoting S. Rep. 2434, 85th Cong., 2d Sess. 1 (1958)).

All five conditions are satisfied here. Because there should be little dispute as to the first, second, third, and fourth conditions (the issues are controlling questions of law, a successful appeal would materially advance the litigation's end, and this motion has been filed timely), Mr. Zachary addresses those conditions first. Undoubtedly, Freeland will dispute that there are substantial grounds for a difference of opinion, but other courts have analyzed the same issues and came to different conclusions, demonstrating an obvious substantial basis for a difference of opinion.

**2.1. The request to certify was made timely.**

The Seventh Circuit requires that requests for certification be filed timely, generally within a month of the order sought to be appealed. *U.S. Steel Corp.*, 2026 U.S. Dist. LEXIS 80144, at *5-

6, (citing cases); *Clay v. Union Pac. R.R. Co.,* 2025 U.S. Dist. LEXIS 109672, at *6 (N.D. Ill. June 10, 2025). Here, Mr. Zachary has filed his request for certification well within a month of the order he seeks to certify. This element weighs in favor of certification.

### 2.2. The Order rules on controlling questions of law.

A "question of law" means a question regarding the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Goodpaster v. NFLC, Inc.*, 2013 U.S. Dist. LEXIS 37363, at *25 (N.D. Ind. Mar. 18, 2013), citing, *Ahrenholz*, 219 F.3d at 676. A question is "controlling" if it is "quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Associates, Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). *See also, Bunn-O-Matic Corp. v. Bunn Coffee Serv.,* 1998 U.S. Dist. LEXIS 8128, at *4 (C.D. Ill. May 20, 1998) ("A controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of the litigation with resulting savings of the court's or the parties' resources").

There can be little dispute here that the Court ruled on controlling questions of law. The Order addressed several controlling legal questions regarding the application of statutory and regulatory provisions, each of which would require reversal if decided incorrectly, materially affecting the course of the litigation:

**Controlling Question of Law 1:** Does the FLSA impose any recordkeeping obligation on an employer to "make, keep, or preserve" records of a minimum wage employee's vehicle expenses when those vehicle expenses are a necessary component of the FLSA wage calculation?

**Controlling Question of Law 2:** What is an employee-plaintiff's burden to demonstrate his vehicle expenses to prove an FLSA violation, and how is that determination different, if at all

for purposes of determining liability versus damages? This encompasses several sub-questions of controlling law:

- Does any burden-shifting apply, under *Parker*, *Mt. Clemens*[4], or otherwise, to a delivery driver alleging under-reimbursed vehicle expenses?

- Can an employee estimate his expenses for purposes of establishing liability, damages, or both?

- What burden of proof applies to this type of case?

**Controlling Question of Law 3:** Can a court impose a FLSA heightened "step-two" standard and decertify a collective action prior to the close of discovery?

**Controlling Question of Law 4:** What is the proper standard to determine whether pizza delivery drivers are similarly situated for purposes of being certified as an FLSA collective?

- Does a difference in vehicles, costs, or miles make drivers dissimilar for collective action purposes?

- Given the burden of proof the Court intends to use, is collective treatment appropriate?

Each of these legal questions and sub-questions is a "controlling" question of law because each deal with the specific application of the FLSA and/or its accompanying regulations and the application of each is "quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon*, 86 F.3d at 659. The Court's holdings on any one or more of the above questions, if reversed, would materially alter the scope of the litigation as set forth in detail below.

Any single question can warrant an interlocutory appeal; here, there are multiple, independently-sufficient questions. Accordingly, the first requirement for certification is met.

[4] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

### 2.3. A successful appeal would materially advance the termination of the litigation.

The Court must also consider whether "an immediate appeal *may* materially advance the ultimate termination of the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (emphasis in original). There is no requirement, statutory or otherwise that if a motion for "interlocutory appeal should be decided in favor of the appellant the litigation will end then and there." *Clay*, 2025 U.S. Dist. LEXIS 109672, at *2 (N.D. Ill. June 10, 2025), quoting, *Sterk* at 536. Instead, it is enough that uncertainty about the status of a claim "might delay settlement ... and by doing so further protract the litigation." *Id.*

This question is easily answered in the affirmative. A successful appeal would materially advance this litigation in at least three concrete ways.

First, reinstating the collective action would restore the efficiencies for which it was designed. The FLSA collective action mechanism provides employees "the advantage of lower individual costs to vindicate [their] rights by the pooling of resources.'" *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 432-33 (S.D. Ill. 2012), citing, *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). In turn, the judicial system also "benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Id.*

As it stands, the Court's Order dissolves the stipulated collective, and in doing so, necessarily eliminates those efficiencies (Doc. 92, p. 21) by effectively converting this case into 300+ individual lawsuits, each with modest individual value but substantial costs. *See, Alvarez v. City of Chicago*, 605 F.3d 445, 448-50 (7th Cir. 2010) (finding that an FLSA collective, even if the collective needs to be divided into subclasses, will likely be more efficient than the alternative of

requiring plaintiffs to bring many individual claims or a variety of smaller collective actions). The Order puts the case further from resolution and greatly increases the burden on both the Court and the parties. In a situation involving 300+ claims of vulnerable workers, an immediate appeal is warranted.

Second, if estimates were permitted, proof of liability and damages would be streamlined. If the Seventh Circuit holds that Mr. Zachary and the opt-ins may estimate their vehicle expenses, whether by expert testimony, representative testimony, or their own accounts, the need for 300+ separate individualized adjudications would be eliminated or drastically reduced.

Third, if the appeal is successful in establishing the employer's recordkeeping duty, it would place responsibility for FLSA compliance with Freeland, instead of leaving 300+ employees to reconstruct old vehicle records they had no obligation to keep. Focusing discovery on the employer, as opposed to requiring individualized production from hundreds of opt-ins, would be far more efficient and proportionate to the case. Indeed, discovery directed toward every one of those opt-ins, without the benefit of any representative or estimation mechanism, would be a herculean task and result in attorney's fees that are many, many multiples of what the drivers might stand to recover. *See, e.g., Johnson Int'l Steel v. Counterweights LLC*, 2021 U.S. Dist. LEXIS 221274, *9-10 (N.D. Ohio Nov. 17, 2021). As the Sixth Circuit cautioned in *Parker*, and employer should not be permitted "to use lowball estimates of drivers' costs and then leave it to them to prove those estimates wrong." *Parker*, 95 F. 4th at 1018.

**2.4. There are substantial grounds for a difference of opinion on each controlling question of law.**

To justify an interlocutory appeal, there must be substantial grounds for a difference of opinion as to the questions of law, *i.e.* whether a controlling question of law is "contestable." In

the Seventh Circuit a controlling question of law "is contestable if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Kmart Corp. v. Uniden Am. Corp. (In re Kmart Corp.*), 2004 U.S. Dist. LEXIS 19829, at *7 (N.D. Ill. Sep. 30, 2004). *See also*, *Bunn-O-Matic Corp.,* 1998 U.S. Dist. LEXIS 8128 at *5 (C.D. Ill. May 20, 1998) ("There must generally be a difficult question of law which is not settled by controlling authority").

This requirement is not asking whether the district court believes its own order was wrongly decided; it is presumed that a court believes its order is correct.[5] *Clay*, 2025 U.S. Dist. LEXIS 109672, at *7 (N.D. Ill. June 10, 2025). *See also, Rivera v. Google Inc.*, 2017 U.S. Dist. LEXIS 239553, at *1 (N.D. Ill. June 27, 2017) ("[A]n interlocutory-appeal certification requires only a 'substantial' ground for difference of opinion, not that the district court be convinced that it came this/close to getting the wrong answer").

Finding substantial grounds for differences of opinion on a controlling issue of law does not change that a court remains confident in its earlier decision, nor is a change of mind necessary to certify an interlocutory appeal. *Clay*, 2025 U.S. Dist. LEXIS 109672, at *7, citing, *United Airlines, Inc. v. Mesa Airlines, Inc.*, 1999 U.S. Dist. LEXIS 16256, at *1 (N.D. Ill. Oct. 5, 1999) ("Since reasonable minds might differ with my view, although of course they would be wrong, I conclude that there are substantial grounds for a difference of opinion."). Instead, it is merely an acknowledgement of the novelty and complexity of the legal issue. *Id.*

[5] Indeed, if a court concludes it came to the wrong decision, it need not rely upon an appellate court, it has the power to correct any such decision. *Jones v. B & J Rocket Am., Inc.*, 2016 U.S. Dist. LEXIS 64606, at *7 (N.D. Ind. May 17, 2016) citing, *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.").

The existence of conflicting decisions from other courts most readily establishes this standard. *See Ambrosia v. Blazesoft Ltd.*, 2025 U.S. Dist. LEXIS 263882, at *7-8 (N.D. Ill. Dec. 22, 2025); *see also In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 212 F. Supp. 2d 903, 909-910 (S.D. Ind. 2002) (certification is appropriate where "other courts have adopted conflicting positions regarding the issue of law proposed for certification").

As demonstrated below, each of the controlling questions of law are subject to substantial differences of opinion. Therefore, this final factor also weighs in favor of certification.

#### 2.4.1. Substantial grounds for differences of opinion exist as to whether the FLSA imposes any recordkeeping obligation on an employer to "make, keep, or preserve" records of employee's vehicle expenses when those vehicle expenses are a necessary component of the FLSA wage calculation.

Much of the Court's analysis is premised on its determination that employers have no obligation to make or keep any records related to an employee's vehicle expenses. The Court held that it is the employees' responsibility, not the employer's, to make records necessary to show FLSA compliance. Showing substantial grounds for a difference of opinion on this question is straightforward: several other courts have reached the opposite conclusion.

At least one district court, also adopting *Parker*'s holding, held that employers have a duty to make records of vehicle expenses. *See West v. Bam! Pizza Mgmt., Inc.,* 814 F. Supp. 3d 1238, 1249 (D.N.M. 2026). *West* is consistent with the principle that "[t]he obligation [of FLSA compliance] is the employer's and it is absolute. He cannot discharge it by attempting to transfer his statutory burdens of accurate record keeping, 29 U.S.C.A. 211(c), and of appropriate payment, to the employee." *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959). *See also, United States DOL v. Fire & Safety Investigation Consulting Servs., LLC*, 915 F.3d 277, 287 (4th

Cir. 2019) (The "FLSA's recordkeeping provisions are vital in ensuring employer compliance with the statute").

This means that the employer must establish a system to collect expense records from employees, much like employers do for employees who travel on business and submit expense receipts for reimbursement. Whether this is difficult or feasible is not the question. Business practices must yield to the law; the law should not be read to yield to business practices. *Parker* itself addressed the employers' complaint that "computing their drivers' actual costs" would be "impossible." *Parker* at 1016. *Parker* held that employers who choose to require employees to provide vehicles must still do so or they do not comply with the FLSA. *Id.* It is, of course, necessary for an employer to make records of an employee's costs in order to "compute" them.

Much of the Court's recordkeeping analysis (Doc. 92, pp. 4-5) turns on its interpretation of 29 U.S.C. § 211(c), which provides:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him…

The Court found the phrase "maintained by him [the employer]" applied to "records," and concluded that because employees "maintain" records of their own vehicle expenses, the employer need not do so because the employer's obligation is to "make, keep, and preserve" *records* maintained by [the employer]. Doc. 92, p. 5.

There are, however, substantial grounds for a difference of opinion on that reading. Specifically, another reading is that the words "maintained by him [the employer]" refer not to records but rather refer to the words immediately preceding the word "maintained," which are: "**other conditions and practices of employment** maintained by [the employer]." (emphasis

added) 29 U.S.C. 211(c). *See West*, 814 F. Supp. 3d at 1249. *West* observed that "Defendants accuse Plaintiff of relying on 'some mysterious unwritten wage law' that 'obligated BAM to maintain records of Plaintiff's actual vehicle expenses.' The law is neither 'mysterious' nor 'unwritten'; it is 29 U.S.C. § 211." *Id.* at 1248, n.5 (internal citation removed).

Put another way, if an employer maintains conditions and practices of employment, then the statute requires employers to "make, keep, and preserve" records of those conditions and practices of employment. The word "make" indicates a duty to create records that the employer does not already have and that are relevant to the conditions and practices that an employer maintains. *See Caserta,* 273 F.2d at 946; *West* at 1249. It is also true that an employer must "make" records of wages—including deductions therefrom arising from "tools of the trade." *West* at 1248-49. "[L]ike all other deductions, Defendants must maintain records of expenses to demonstrate that they paid employees the minimum wage." *West* at 1249.

In *West,* the Court analyzed the same claims on behalf of pizza delivery drivers, adopted *Parker*'s holding, analyzed the same recordkeeping provision, and held that the employer has the duty to make and keep records of the employee's vehicle expenses. *West* at 1249. The *West* court described that complying with the statute would be impossible unless an employer kept such records: "Defendants cannot escape the conclusion that tracking actual costs is a necessary condition for compliance in the minimum-wage context." *West*, 814 F. Supp. 3d at 1243 n.3.

This conclusion is reinforced by the FLSA's enforcement structure. When the Department of Labor investigates an employer's compliance with the FLSA's minimum wage requirements, it does so by examining the employer's records. The DOL Field Operations Handbook, Chapter 30 "Recordkeeping" §30c15 states that "in lieu of actual costs and associated recordkeeping" the

DOL may use the IRS rate for employee-owned cars. In other words, the DOL interprets the FLSA as requiring employers to keep records and pay actual expenses. If the employer doesn't, the DOL will use the IRS rate as a proxy. Likewise, the first step in a private plaintiff proving an FLSA violation is "securing the production of those [the employer's] records." *Mt. Clemens* at 688.

Contrary to the authorities cited above, this Court reasoned that because the employees had the record of their expenses in the first instance, it was the employees' obligation, not the employers' to maintain those records. Doc. 92, pp. 4-5. But, if an employer has a practice or condition of employment that impacts an employee's wage—and there is no dispute that is the case here—then other authorities have held that the employer has an affirmative duty to act with reasonable diligence to discover what's going on in its business. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016). This includes a duty "to inquire into the conditions prevailing in his business." *Reich v. Dep't of Conservation & Nat. Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994). Certainly, the employer cannot turn a blind eye to what's going on, when it knows its employees are necessarily incurring costs and those costs must be reimbursed. *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).

The *West* court agreed that the employer had this duty and went on to describe that a result contrary to such a duty would imperil the FLSA's protections. In describing the employer's proposed regime:

> (1) An employer selects a random reimbursement rate; (2) employees carefully record every one of their vehicle expenses in case they need to prove liability; (3) the employer never requests those records nor maintains its own log; (4) employers assume without knowing that employees are receiving the minimum wage; and (5) whether that is true rests peculiarly in their employees' ken.

*West v. Bam! Pizza Mgmt.,* 2026 U.S. Dist. LEXIS 95484, at *14 (D. New Mex. April 29, 2026) ("*West II*"). This is consistent with *Parker*'s admonishment that "the risk of financial harm from borderline reimbursements—the risk, specifically, that even 'reasonably approximate' reimbursements might be inadequate ones for some employees—must fall solely on the employer." *Parker* at 1016, citing *Caserta* at 946.

*Parker*'s warning means little if the employer has no duty to discover what expenses an employee has incurred. Put another way, if an employer can rely upon an employee's ignorance or lack of records, then the risk of underpayment falls on the employee.

Other pre-*Parker* courts have agreed that employers bear a recordkeeping responsibility when it comes to vehicle expenses. *See Waters v. Pizza to You, LLC*, 538 F.Supp. 3d 785 (S.D. Ohio 2021) (holding a prudent employer should maintain vehicle expense records of its delivery drivers to show compliance with the FLSA); *Cornish v. Deli Mgmt., Inc.*, 2016 U.S. Dist. LEXIS 141209, at *9 (D. Md. Oct. 12, 2016) (relying on the DOL Field Operations Handbook and finding that, "for minimum wage purposes, an employer may either reimburse employees who drive a personal vehicle for business use at the IRS standard business mileage rate or keep accurate, contemporaneous expense records and reimburse the employee accordingly"); *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 716 (E.D. Pa. 2014) (same); *see also Hatmaker v PJ Ohio, LLC*, 2020 U.S. Dist. LEXIS 39715, at *11 (S.D. Ohio Mar. 6, 2020). Although those cases predate *Parker*, *Parker*'s actual-expense holding cannot be read to *lessen* any recordkeeping burden.

Employers and employees are not on equal footing when it comes to the FLSA. The FLSA is a uniquely protective statute that puts all its burdens of compliance (and the risk of non-compliance) on the employer. *Caserta*, 273 F. 2d at 946. This approach recognizes that the FLSA

protects a group of vulnerable individuals who have little bargaining power—those people forced to work in the lowest paying jobs.

Thus, courts have held that employees have no legal duty to create or maintain vehicle expense records. *See Hatmaker*, 2020 U.S. Dist. LEXIS 39715, at *11 (S.D. Ohio Mar. 6, 2020). An employer, however, has the power, as a condition of employment, to request vehicle records as they are created, thereby creating an obligation to the employee to turn in the expense records (just like an employee who travels for work might do). Permitting an employer to avoid liability because employees failed *sua sponte* to preserve their own records would effectively waive FLSA rights, which the Supreme Court has long prohibited. *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740-741 (1981); *Brookyln Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

There does not appear to be any case law support that, under *Parker*, an employer would not have to keep records. The three sources of authority that the Court cites regarding recordkeeping[6] all predate *Parker* and were rejected by *Parker*. First, *Parker* expressly held that the 2020 DOL letter is unworthy of deference. *Parker* at 1016. *Sullivan* and *Morangelli* adopted a legal standard—that an employer could comply with the FLSA by reimbursing a "reasonable approximation" of an employees' expenses—that *Parker* rejects, which, in turn, would alter the recordkeeping requirements. *Id.*; *Sullivan* at 1155; *Morangelli* at 301.

Under *Parker*, as adopted here, there are substantial grounds for differences of opinion on this controlling question of law.

[6] Doc. 92, pp. 6-7, citing, 2020 DOL Opinion Letter, *Sullivan v. PJ United, Inc.*, 362 F.Supp. 3d 1139, 1151 (N.D. Ala. 2018); *Morangelli v. Chemed Corp.*, 922 F. Supp.2d 278, 302 (E.D. N.Y. 2013)

**2.4.2. Substantial grounds for differences of opinion exist as to whether employees may meet their burden of proof using estimates.**

On this question, the Court imposed the following standard: employees must show they "were in fact paid less than minimum wage once all costs that can be directly attributed to employment were taken into account." Doc. 92, p. 12. Moreover, a worker "must show reliable and precise evidence of costs borne, and must also provide a rigorous explanation for what portion of those costs can be fairly attributable to the employer." *Id.* at p. 17. There are substantial grounds for disagreement on this point because many courts allow FLSA plaintiffs to estimate their wages, hours, and other matters in a variety of ways. This is true regardless of whether *Mt. Clemens* burden-shifting applies. The Court seemed to impose a precision standard related to damages (see Doc. 92, p. 13), even though damages were not at issue; rather the only question was liability where Mr. Zachary only needed to show he was under-reimbursed by any amount, even $0.01.

In this case, Mr. Zachary presented testimony via his interrogatory answers about the expenses he incurred by category and amount. Doc. 76, pp. 2, 13-15, citing, Doc. 75-3. That evidence was unrebutted other than Freeland calling it "absurd" and requesting a hearing on it. Doc. 81, p. 9. Once the party moving for summary judgment presents evidence of the absence of a genuine issue of material fact, "the nonmoving party may not rest on allegations or denials in its own pleading but must set out specific facts showing a genuine issue for trial." *McCarty v. Purdue Univ. the Trs.*, 2021 U.S. Dist. LEXIS 165860, at *7 (N.D. Ind. Sep. 1, 2021). Even so, the Court held that Mr. Zachary's testimony and estimates were insufficient evidence, implying that more was required, including records to back up every expense. There are substantial grounds for a difference of opinion on this topic both specifically and in principle.

For example, *West* held that, if there is a gap in records, employees may estimate and could do so by referring to the IRS rate. *West* at 1242, n.1, *see also, id.*, at 1248–49. *Parker* itself warned courts not to create a regime whereby an employer could "use lowball estimates of drivers' costs and then leave it to them to prove those estimates wrong." *Parker* at 1018. This would imperil the FLSA's protections, contrary to the Supreme Court's instructions. *Id.* at 1018-19. *Parker*'s burden-shifting structure presumes that an employee can estimate at the first step. *Id.* at 1019.

More broadly, courts have allowed employees to estimate and approximate in wage and hour cases. *See, e.g., Morgan v. Family Dollar Stores*, 551 F.3d 1233 (11th Cir. 2008) (employee testimony was sufficient to establish the employees were not subject to FLSA executive exemption); *Buckley v. S.W.O.R.N. Protection, LLC,* 2022 U.S. Dist. LEXIS 178553, at *17-18 (N.D. Ind. Sept. 30, 2022) (a plaintiff's estimates supported by plaintiff's testimony alone was sufficient to meet her burden); *Hayes v. Thor Motor Coach, Inc.,* 2020 U.S. Dist. LEXIS 266661, at *8 (N.D. Ind. June 11, 2020) (holding plaintiff's reasonable estimate of unpaid wages was sufficient to meet her burden at the pleading stage and would be sufficient "to support her case should that allegation [of unpaid overtime] prove true after discovery"); *Walsh v. Timberline S.*, 2022 U.S. App. LEXIS 6368, *14, *17-18 (6th Cir. Mar. 9, 2022) (upholding grant of summary judgment for plaintiffs where plaintiffs relied on defendants' payroll records and estimates based on those records to account for missing records).

This is particularly true where the best evidence—here, detailed and comprehensive expense records—may not be available. *See, Martin v. Selker Bros., Inc.*, 949 F.2d 12886 (3rd Cir. 1991); *see also, Walsh*, 2022 U.S. App. LEXIS 6368, at *14 (6th Cir. March 9, 2022) (holding that

plaintiffs may estimate their unpaid work, and if "the employer cannot negate the estimate, then the court may award damages to the employee, even through the result be only approximate.")

Other courts have held that a plaintiff need only propose a "reasonable" calculation of back wages owed, and this can be a "rough estimate." *Acosta v. Off Duty Police*, 915 F.3d 1050, 1065 (6th Cir. 2019). In making this estimate, the employee may rely on any "just and reasonable" inferences from whatever data is available. *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 422, 459 (2016); *see also Monroe v. FTS USA, LLC*, 860 F.3d 389, 401 (6th Cir. 2017) (allowing employees to use representative evidence). The plaintiff's calculation is typically reasonable when the employer "cannot identify any reasonable alternative." *Off Duty Police*, 915 F.3d at 1065.

There are substantial grounds to believe that other courts may consider less precise evidence, not require comprehensive records, and/or not require "a rigorous explanation for what portion of those costs can be fairly attributable to the employer" in a case like this. *West* at 1248-1249; *Parker* at 1019; *see also, Hatmaker v*, 2020 U.S. Dist. LEXIS 39715, at *11 (S.D. Ohio Mar. 6, 2020) ("Defendants will not be permitted to put Plaintiffs through the trouble, effort, and expense required by demanding that drivers produce information the drivers likely no longer have and had no reason or duty to keep.")

**2.4.3. Substantial grounds for differences of opinion exist as to whether an employee can estimate his expenses by reference to the IRS rate.**

Assuming employees may estimate their expenses, a further question arises: may employees estimate their vehicle expenses by reference to the IRS rate?

Based on *Parker*, the Court held that "an 'average' rate (including the IRS average) never complies with the FLSA as a matter of law." Doc. 92, p. 12. Mr. Zachary agrees that for purposes

of FLSA compliance, the IRS rate cannot be used to demonstrate an employer's *per se* compliance or non-compliance with the FLSA' minimum wage requirements. *Parker* at 1016, 1018.

This is not, however, his argument. Rather, Mr. Zachary's position is that employees may use the IRS rate as an estimate of their actual vehicles expenses for purposes of establishing liability and damages. Doc. 76, p. 15.

*Parker's* holdings were limited to an employer's wage obligation:

- an ***employer*** is ***not permitted*** to approximate an employee's expenses, and
- an ***employer*** is ***not required*** to reimburse at the IRS rate.

*Parker* at 1013-1018. Neither of *Parker*'s holdings restrict an employee from using a national average rate as an appropriate estimate of his expenses, particularly when the IRS rate "disfavors high-mileage [drivers], like delivery drivers." *Parker* at 1017. There is an important distinction between (1) arguing that the employer is *required* to reimburse at the IRS rate and (2) *estimating* the employee's expenses at that rate.

*West* agreed that this is a proper way to adjudicate this difficult issue. *See West*, 814 F. Supp. 3d at 1242 n.1 ("It is worth noting that the IRS rate has been found to be presumptively sufficient for purposes of reimbursement and could be used to calculate damages if there is a gap in expense records.").

This is not to say the IRS rate is an appropriate estimation of expenses in every case, as *West* recognizes. *West,* 814 F. Supp. 3d at 1242 n.1. But, there is no caselaw that *prohibits* an employee from referencing a nationwide rate that, in many instances, "disfavors high-mileage" drivers, "like delivery drivers." *Parker* 95 F.4th at 1017. Given that *West*, applying *Parker*, held that the IRS rate may be used for this purpose, there are clear substantial grounds for difference of

opinion on this holding. *See also*, *Hatmaker v. PJ Ohio, LLC*, 2019 U.S. Dist. LEXIS 191790 (S.D. Ohio Nov. 5, 2019); *Waters*, 538 F. Supp. 3d 785 (S.D. Ohio 2021).

**2.4.4. Substantial grounds for a difference of opinion exist as to whether a court should entertain a decertification motion prior to the completion of discovery.**

As Mr. Zachary noted in his original brief, this case is just starting discovery and discovery is not complete. Doc. 84, pp. 1, 5. Thus, Mr. Zachary argued that Freeland's motion itself was premature, and the Court should not have considered it until discovery was complete. *Id.* Although the Court acknowledged that FLSA collective actions proceed in a two-step fashion, it ruled on Freeland's Motion anyway, prior to the parties conducting much discovery. Doc. 92, p. 18-20.

It is important to allow discovery to play out prior to considering a decertification motion. In wage and hour cases, the employers have nearly all of the relevant information—their policies, what underlies those policies, information about other employees, etc. Allowing an employer to do what Freeland did here—stipulate the conditional certification and then quickly move to decertify the collective prior to discovery's completion—also allows the employer to present a "take our word for it" argument without allowing an employee to test the employer's claims.

Reasonable minds can differ on this point, *i.e.*, whether the Court should have considered Freeland's motion at this stage or should have imposed a heightened "second-step" standard. Many courts have held that a decertification motion is not appropriate until discovery is complete or nearly complete. *Toliver v. JBS Plainwell, Inc.*, 2014 U.S. Dist. LEXIS 190980, at *7 (W.D. Mich. May 2, 2014) (denying motion for decertification as premature because such "motions are appropriate at the close of discovery, when the factual record is well developed."); *Bradford v. CVS Pharmacy, Inc.*, 2013 U.S. Dist. LEXIS 146501, at *5 (N.D. Ga. Oct. 10, 2013) (same); *Craig v.*

*Rite Aid Corp.,* 2012 U.S. Dist. LEXIS 11677, at *5-6, 22-26 (M.D. Pa. Jan. 31, 2012) (finding that the "wide-spread practice of considering decertification after discovery is entirely or largely complete" makes sense in light of the court's obligation to "evaluate the totality of the evidence and circumstances that may bear upon the suitability of a particular action to proceed collectively.") (citing cases); *Schaefer-Larose v. Eli Lilly and Co.,* 2010 U.S. Dist. LEXIS 105376, at *2 (S.D. Ind. Sept. 29, 2010) (holding that because discovery regarding matters pertaining to decertification was ongoing, a ruling on decertification of the collective action would be premature).

**2.4.5. Substantial grounds for a difference of opinion exist as to whether a collective action is appropriate if the drivers drive different vehicles.**

The Court's final holding was that this case was not suitable for collective treatment. Doc. 92, p. 21. The Court relied on its prior conclusions of law that employees could not estimate their expenses, could not rely on the IRS rate to establish their damages, needed to present records of individual expenses, and that it was the employees' burden, rather than the employers', to keep and maintain records of vehicle expenses under the FLSA. *Id.* at 20-21. Based on these conclusions, the Court found that because the employees drove different vehicles and, accordingly, would have different expense amounts, they were not similarly situated with regard to the amount of damages and therefore the collective should be decertified. *Id.* There are substantial grounds for differences of opinion on these controlling issues of law.

As the Court noted, many cases have conditionally certified pizza delivery driver cases making the same allegations as those here. Doc. 92, p. 21. The Court, however, discounted those cases because "almost all of the cases appear to have been cited under the lenient preliminary certification stage, not the stringent second-step analysis," and prior to *Parker*, "many courts used

the DOL's internal enforcement regulations to interpret the statute's meaning, allowing for the IRS mileage rate as a standard gauge for an appropriate reimbursement." Doc. 92, p. 21. There are substantial grounds for a difference of opinion on this question for several reasons.

First, cases involving drivers, who necessarily drive different cars, have routinely been conditionally certified under both the FLSA *and* certified under Rule 23's more stringent requirements. Plaintiff's Response in Opposition to Defendants' Motion for Decertification, Doc. 84, p. 1, 3-5.[7] Thus, it is not the stage of consideration that mattered. Rule 23 certification is a more difficult standard to meet than FLSA certification. *Compare* Fed. R. Civ. P. 23(a), *with* 29 U.S.C. 216(b) (requiring only that the employee's be "similarly situated"); *see also Clancy v. Salvation Army*, 825 F. Supp. 3d 674, 687 (N.D. Ill. 2026) ("requirements for certification under Rule 23 are more rigorous than for a collective action under the Fair Labor Standards Act.").

Second, since the briefing was complete, an additional opinion was issued certifying FLSA collectives and Rule 23 classes under the same factual scenarios as this case. *See, Dietrich v. Romeo's Pizza, Inc.*, 2025 U.S. Dist. LEXIS 168657 (N.D. Ohio Aug. 29, 2025) (certifying Rule 23 class and

---

[7] Certifying both Rule 23 class and FLSA collective: *Hoffman v. Déjà Vu Pizza LLC*, 2024 U.S. Dist. LEXIS 106588 (D.N.D. June 6, 2024); *Branning v. Romeo's Pizza, Inc.*, 594 F. Supp. 3d 927 (N.D. Ohio 2022). Certifying FLSA collective: *Patzfahl v. FSM ZA, LLC,* 2021 U.S. Dist. LEXIS 202912 (E.D. Wis. Oct. 21, 2021); *Colon v. EYM Pizza of Illinois, LLC*, 2019 U.S. Dist. LEXIS 18056 (N.D. Ill. Oct. 15, 2019); *Young v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 38533 (N.D. Ill. Mar. 8, 2018); *Brandenburg v. Cousin Vinny's Pizza*, 2017 U.S. Dist. LEXIS 129955 (S.D. Ohio Aug. 15, 2017); *Meetz v. Wis. Hospitality Grp. LLC*, 2017 U.S. Dist. LEXIS 138380 (E.D. Wisc. Aug. 29, 2017); *Tegtmeier v. PJ Iowa, LC*, 208 F.Supp.3d 1012, at *3-21 (S.D. Iowa Sept. 21, 2016); *Bellaspica v. PJPA, LLC*, 3 F.Supp.3d 257 (E.D. Pa. Mar. 11, 2014); *Smith v. Pizza Hut, Inc.*, 2012 U.S. Dist. LEXIS 56987 (D. Colo. Apr. 21, 2012); *Darrow v. WKRP Mgmt. LLC*, 2012 U.S. Dist. LEXIS 24997 (D. Colo. Feb. 28, 2012); *Perrin v. Papa John's Int'l*, Inc., 2011 U.S. Dist. LEXIS 104059 (E.D. Mo. Sept. 14, 2011); *Wass v. NPC Int'l., Inc.,* 2011 U.S. Dist. LEXIS 32761 (D. Kan. Mar. 28, 2011); *Bass v. PJComn Acquisition Corp.*, 2010 WL 3720217 (D. Colo. Sept. 15, 2010); *Luiken v. Domino's Pizza, LLC*, 2010 U.S. Dist. LEXIS 61020 (D. Minn. June 21, 2010). Certifying Rule 23 class: *Edwards v. PJ OPS Idaho*, 2022 U.S. Dist. LEXIS 102861, at *10 (D. Idaho June 7, 2022); *Patzfahl v. FSM Za, LLC*, 2022 U.S. Dist. LEXIS 230073 (E.D. Wis. Dec. 19, 2022); *Waters v. Pizza to You, LLC*, 2021 U.S. Dist. LEXIS 11743 (S.D. Ohio Jan. 22, 2021); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 5 2018); *McFarlin v. Word Enters., LLC*, 2017 U.S. Dist. LEXIS 164968 (E.D. Mich. Oct. 5, 2017); *Behaein v. Pizza Hut, Inc.,* Case No. BC541415 (Sup. Ct. of L.A. Cnty. CA Jul. 15, 2015); *Oregal v. PacPizza, LLC,* Case No. C12-01454 (Sup. Ct. of Contra Costa Cnty. CA May 8, 2014); *Perrin v. Papa John's Int'l, Inc.*, 2013 U.S. Dist. LEXIS 181749 (E.D. Mo. Dec. 31, 2013); *Bass v. PJCOMN Acquisition Corp.*, 2011 U.S. Dist. LEXIS 58352 (D. Colo. June 1, 2011).

conditionally certifying FLSA collective);[8] *see also*, *Hawn v. Bajco 100,* LLC, 2023 U.S. Dist. LEXIS 27833 (N.D. Ohio Feb. 17, 2023) (certifying FLSA collective); *West v. Bam! Pizza Mgmt* 2023 U.S. Dist. LEXIS 10406 (D. New Mex. Jan. 20, 2023) (certifying FLSA collective).

Third, it is axiomatic in these cases that the drivers drive different cars, different numbers of miles and, accordingly, would have varying expenses. While this Court found these factors to be a bar to a collective action, other courts have held, even though these differences are present in every case, conditional certification is proper.[9] *See* fn. 6, p. 20, *supra*; *Dietrich*, 2025 U.S. Dist. LEXIS 168657 (N.D. Ohio Aug. 29, 2025). Employers also argue differences in location and reimbursement rates and, even then, courts conditionally certify cases. *See, e.g. Déjà vu Pizza, LLC*, 2024 U.S. Dist. LEXIS 106588, *8-10 (D.N.D. June 6, 2024); *Patzfahl,* 2021 U.S. Dist. LEXIS 202912 (E.D. Wis. Oct. 21, 2021). This is also true post-*Parker*. *See*, *Déjà vu Pizza, LLC*, 2024 U.S. Dist. LEXIS, *8-10 (D.N.D. June 6, 2024); *Dietrich*, 2025 U.S. Dist. LEXIS 168657(N.D. Ohio Aug. 29, 2025).

Courts have gone the other way on this question; *i.e.*, there are substantial grounds for differences of opinion.

**3. Conclusion**

The Aug. 6, 2026 Order fundamentally transforms this litigation by dissolving an efficient collective mechanism and replacing it with individualized inquiries for over 300 opt-in plaintiffs,

---

[8] Filed as supplemental authority on March 23, 2026 (Doc. 89).

[9] Although this Court is correct that most of the cases were at the lenient pre-discovery phase (except for the Rule 23 cases), in this type of case, that fact should carry little weight because it is known, pre-discovery, that everyone drives different cars and different miles. Thus, if this was a bar to conditional certification, courts would not send notice. Discovery does not reveal any new facts in this regard. Indeed, these differences are common arguments at the initial notice stage and, still, courts conditionally certify collective actions.

each with individually modest claims. Permitting that path to proceed before appellate review would impose enormous avoidable costs on the parties and this Court.

Courts, post-*Parker*, and using the same legal standard, have come to different conclusions on the controlling questions of law outlined herein. *Déjà vu Pizza, LLC*, 2024 U.S. Dist. LEXIS 106588, *8-10 (D.N.D. June 6, 2024); *Dietrich*, 2025 U.S. Dist. LEXIS 168657(N.D. Ohio Aug. 29, 2025); *West*, 814 F. Supp. 3d 1238 (D.N.M. 2026). All five conditions for §1292(b) certification are satisfied.

Accordingly, Mr. Zachary respectfully asks the Court to modify its Order to allow for an interlocutory appeal.

Respectfully submitted,

*/s/ Andrew Kimble*

Andrew R. Biller (*Pro Hac Vice*)
Andrew P. Kimble (*Pro Hac Vice*)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*

And

Frank Raimond
Raimond & Staines, LLC
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 884-9636
frank@raimondstaines.com

*Counsel for Plaintiff*

**Certificate of Service**

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Andrew Kimble*
Andrew P. Kimble